UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SEXUAL MINORITIES UGANDA | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | Civil Action |
| SCOTT LIVELY, individually and as | ) | |
| President of Abiding Truth Ministries, | ) | 3:12-CV-30051 |
| | ) | |
| *Defendant.* | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER
ORDER DENYING CERTIFICATION FOR INTERLOCUTORY APPEAL**

In denying Defendant's motion for § 1292(b) certification, the Court held there was "[n]o substantial question of law justifying an interlocutory review" and that "the need for discovery would make such an appeal improper, and a needless burden on the court of appeals." Dkt. 71. Defendant charges that Plaintiff's arguments in opposition to his motion to certify rest on "six (6) demonstrably flawed, deceptive and clearly erroneous premises" and if the Court "relied upon any of these premises, the Court should reconsider its decision..." Def. Br. at 1. Defendant fails to show how even one of Plaintiff's premises is clearly erroneous; and his accusations of deception are uncalled-for. His motion should be denied.

As one of three "narrowly tailored and seldom invoked" exceptions identified by the First Circuit as warranting a district court's reconsideration of an earlier ruling, clear error is an exacting standard. *Sarro v. Philip Morris United States, Inc.*, 2010 U.S. Dist. LEXIS 46450, at *4 (D. Mass. May 12, 2010) (quoting *United States v. Connell*, 6 F.3d 27, 31 (1st Cir. 1993)). Rather than meet this standard, Defendant's motion for reconsideration restates many of the same arguments raised, and rejected, twice before. Failing to present any "facts or law of a strongly convincing nature to induce the [C]ourt to reverse [its] prior decision," Defendant improperly uses a motion for reconsideration to simply "vent his dissatisfaction with the Court's

reasoning." *Davis v. Lehane*, 89 F. Supp. 2d 142, 149 (D. Mass. 2000) (internal quotations omitted). Defendant is not "not entitled to another bite at the apple simply because the Court did not rule in his favor." *Antony v. Duty Free Ams., Inc.*, 705 F. Supp. 2d 112, 115 (D. Mass. 2010).

## ARGUMENT

While district courts retain the discretion to reconsider interlocutory orders and revise or amend them at any time prior to final judgment, the Supreme Court has warned that "courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Sarro*, 2010 U.S. Dist. LEXIS 46450, at *3 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).

The standard for "clear error" is not met "so long as [the decision] is 'plausible in light of the record viewed in its entirety.'" *Antony*, 705 F. Supp. 2d at 114 (D. Mass. 2010) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)). "[M]ere doubt" – which Defendant even fails to successfully raise here – is not enough. *New Seabury Props., LLC v. New Seabury Co. Ltd. P'shp (In re New Seabury Co. Ltd. P'shp)*, 2004 U.S. Dist. LEXIS 3433, at *10 (D. Mass. Mar. 5, 2004) (quoting *White v. Higgins*, 116 F.2d 312, 317 (1st Cir. 1940)).

I. **Defendant Fails to Demonstrate "Clear Error" in the Court's Denial of Certification for Review of its Application of *Kiobel***

Defendant asserts that upon an interlocutory appeal, he would "ask the First Circuit to determine whether, as a matter of law, *Kiobel* allows the exercise of subject matter jurisdiction over a U.S. Citizen who allegedly managed or assisted or encouraged from the United States other actors to violate international law on foreign lands." Def. Br. at 5. The only way to hold that the Court lacks subject-matter jurisdiction over Plaintiff's ATS claims in this case as a matter of law would be to (1) ignore how the presumption against extraterritoriality is applied, i.e. to assess what conduct a claim does and does not reach rather than a court's power to hear a

claim, and (2) adopt Defendant's erroneous assertion that there is essentially a blanket, universal bar to all claims with extraterritorial conduct and dimensions – regardless of the U.S. citizenship and residence of a defendant and whether he engaged in conduct domestically that furthered or was integral to the violations – a view that contradicts the Supreme Court's ruling.[1] The Court's denial of § 1292(b) certification of this question did not constitute clear error.

### A. *Kiobel* presents a merits question, not a question of subject-matter jurisdiction

Defendant takes issue with Plaintiff's position that *Kiobel's* presumption against extraterritoriality is a merits question. Def. Br. at 1-3. As Plaintiff previously explained, dkt. 58 at 4-5 & dkt. 69 at 4, the *Kiobel* court, citing *Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869 (2010), noted that the presumption against extraterritoriality is "typically appl[ied]…to discern whether an Act of Congress regulating conduct applies abroad." *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1664 (2013). In *Morrison*, the Supreme Court found that the district court had jurisdiction under Section 78aa of the Securities Exchange Act, which provides, "[t]he district courts of the United States . . . shall have exclusive jurisdiction of violations of [the Exchange Act]," *Morrison*, 130 S. Ct. at 2877 n.3, and read the presumption against extraterritoriality into Section 10(b) to determine "whether the allegations the plaintiff makes entitle him to relief," *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 709 n.4 (2012) (quoting *Morrison*, 130 S. Ct. at 2877). Recognizing that unlike the Exchange Act, the ATS is a "strictly jurisdictional statute" and, as such, "does not directly regulate conduct or afford relief," *Kiobel*, 133 S. Ct. at 1664 (quoting *Sosa*, 542 U.S. at 713), the *Kiobel* court examined the way in which ATS claims are brought. The court first recalled from *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), that the statute was "enacted on the

---

[1] Defendant fails to cite to any authority in support of its contention that "every court that has applied [*Kiobel*] has concluded that neither the U.S. citizenship of a defendant, nor his alleged management or aiding and abetting of a foreign tort from the U.S. are sufficient to trigger ATS jurisdiction." Def. Br. at 4.

understanding that common law would provide a cause of action for [a] modest number of international law violations," *Kiobel*, 133 S. Ct. at 1663 (quoting *Sosa*, 542 U.S. at 724), if those violations implicated norms that are "specific, universal and obligatory," *id*. at 1665 (quoting *Sosa*, 542 U.S. at 732). Because the common law cause of action is what regulates conduct, *id.* at 1664, the *Kiobel* court then concluded that "[t]he principles underlying the presumption against extraterritoriality thus constrain courts exercising their power under the ATS," *id*. at 1665. In other words, the presumption constrains courts in their application of common law causes of action once their jurisdiction under the ATS has already been established. As a result, the court determined that the "presumption against extraterritoriality applies to *claims under* the ATS"; it does not apply to the ATS itself. *Id*. at 1669 (emphasis added). *See also id*. at 1665 ("[T]he question is whether *a cause of action under the ATS* reaches conduct within the territory of another sovereign.") (emphasis added).

       The error in Defendant's view – as well as in the view of other district courts as Defendant noted, Def. Br. at 2-3 n.1 – is further clarified when one considers yet another "strictly jurisdictional" statute, 28 U.S.C. § 1331, which empowers federal courts to hear cases "arising under" federal law. As *Kiobel* and *Morrison* demonstrate, one would not consider applying the presumption against extraterritoriality to §1331, because the presumption exists to address the concerns that arise with the export of substantive legal norms, rather than the creation of federal courts abroad. *See Kiobel*, 133 S. Ct. at 1664 ("The question here is not whether petitioners have stated a proper claim under the ATS, but whether a claim may reach conduct occurring in the territory of a foreign sovereign."); *Morrison,* 130 S. Ct. at 2877 ("to ask what conduct [a statute] reaches is to ask what conduct [it] prohibits, which is a merits question"). Thus, in the §1331 context, the presumption would apply, if at all, to the statutory or common law under which the plaintiff's claim arises, not to the jurisdiction-bearing statute.

### B. Even if *Kiobel* presented a question of subject-matter jurisdiction, its application would still be inappropriate for interlocutory review

Ruling on the Defendant's motion for § 1292(b) certification, the Court held that "the need for discovery would make such an appeal improper, and a needless burden on the court of appeals." Dkt. 71. Even if Defendant were correct that *Kiobel* presents a question of subject-matter jurisdiction, it would still be a fact-based inquiry and thus not ripe for appellate review at this time. As Plaintiff has already explained, and this Court has correctly understood, the question as to whether claims brought under the ATS "touch and concern the territory of the United States…with sufficient force to displace the presumption against extraterritoriality,'" dkt. 59 (Order on Motion to Dismiss) at 45 (quoting *Kiobel*, 133 S.Ct. at 1669), inherently requires an assessment of the facts as opposed to "an abstract legal issue" as required under § 1292(b), dkt. 69 at 4 (quoting *McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1258 (11th Cir. 2004).[2]

Defendant points to *United Air Lines, Inc. v. Gregory*, 716 F. Supp. 2d 79 (D. Mass. 2010) to suggest that just because a question may require a factual analysis does not mean that it is unsuitable for interlocutory review. Def. Br. at 5. However, the Court found that the Airline Deregulation Act's "significant effects" test did not require a "detailed review of the factual record," and "[i]ndeed, this Court was able to resolve the preemption question before discovery commenced." *Id*. at 91. The Court further noted that the question had been described previously as "the archetypal example of an abstract legal issue." *Id*. (citing *Ahrenholz v. Board of Trustees*, 219 F.3d 674, 677 (7th Cir. 2000)).

---

[2] Even if the question were one of subject-matter jurisdiction, where jurisdictional questions involve factual inquiries, it is common practice that courts permit discovery to determine whether they have jurisdiction over a set of claims. *See*, *e.g.*, *Skwira v. United States*, 344 F.3d 64, 71-72 (1st Cir. 2003) ("In a situation where the parties dispute the predicate facts allegedly giving rise to the court's jurisdiction, the district court will often need to engage in some preliminary factfinding.").

### C. Determining that the application of *Kiobel*'s "touch and concern" test is inappropriate for interlocutory review does not constitute a "clear error"

Defendant raises the Seventh Circuit decision in *In re Text Messaging Antitrust Litig.*, 630 F.3d 622 (7th Cir. 2010), to assert that there is clear error in considering the application of a legal standard to be inappropriate for interlocutory review.[3] Def. Br. at 3-4. The Seventh Circuit certified for interlocutory appeal the "interpretation, and *not merely the application*, of a legal standard—that of [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)]." *Text Messaging*, 630 F.3d at 625 (emphasis added).[4] Moreover, the court acknowledged it was taking an unusual step in light of the "rather special circumstances" of that appeal, along with the "concerns underlying" *Twombly*. *Id.* at 625-626.

As Plaintiff already explained in this case, no substantial grounds for difference of opinion exist as to the applicable legal standard – the vast majority of decisions following *Kiobel* have applied the "touch and concern" test as the Court did here. *See* dkt. 69 at 6-7 (collecting

---

[3] Defendant suggests to this Court that "the First Circuit has cited with approval this particular aspect of *Text Messaging*." Def. Br. at 4 (citing *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 44 (1st Cir. 2013). However, the First Circuit in *Evergreen* was dealing with an appeal of a final judgment – the dismissal of the plaintiff's complaint – and was citing to *Text Messaging* and many other decisions to show the differences of opinion among the circuit courts as to pleading requirements under *Twombly*. *Id.*

[4] This is further confirmed by the cases upon which *Text Messaging* and the Defendant, Def. Br. at 3, rely. In those cases, interlocutory review was granted where the controlling legal standard was unclear, *see Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 616 (7th Cir. 2009) ("The proper standard to apply in demonstrating waiver is the subject of much debate by the parties in this case….Neither party has been able to point us to *any cases* discussing this issue in the context of § 1407) (emphasis added), or the district court applied the wrong legal standard, *see Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 379 (5th Cir. 2004) (reversing district court order to vacate an arbitration award because "the district court erred in identifying arbitrariness and capriciousness as an independent ground for vacatur"); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 720 (11th Cir. 1987) (reversing district court's denial of class certification upon "[c]oncluding that the district court applied erroneous legal standards"), or misinterpreted the scope of a constitutional protection on a motion for summary judgment (i.e., following discovery), *see Florence v. Board of Chosen*, 621 F.3d 296 (3d Cir. 2010); *Weintraub v. Board of Educ. of City School Dist.*, 593 F.3d 196 (2d Cir. 2010).

cases). The much smaller minority sought to apply the test put forth by Justices Alito and Thomas, rejected by the majority. *See* dkt. 69 at 6 n.2, 9 (citing *Balintulo v. Daimler AG*, 2013 U.S. App. LEXIS 17474 (2d Cir. Aug. 21, 2013)),[5] at 7 (citing *Al Shimari v. CACI Int'l, Inc.*, 2013 U.S. Dist. LEXIS 92937, at *31 (E.D. Va. June 25, 2013) (describing the "touch and concern" test as "textually curious"), at 9, 10 n.7 (citing *Giraldo v. Drummond Co.*, 2013 U.S. Dist. LEXIS 103981, at *32-33 (N.D. Ala. July 25, 2013) (applying Justice Alito's test in *dicta*).

### D. Determining that resolution of any difference of opinion on the *Kiobel* standard would not materially advance the litigation does not constitute "clear error"

Finally, even if it could be argued that a difference of opinion exists as to the legal standard, the resolution of any such difference of opinion would not materially advance this litigation. This Court already determined that Plaintiff's claims are not barred by *Kiobel* not only because Defendant is a U.S. citizen and resident, but also because Plaintiff alleged actionable conduct in the U.S. *See* dkt. 59 (Order on Motion to Dismiss) at 44-45. The Court's determination that Plaintiff adequately pled actionable domestic conduct constitutes application of a legal standard to facts, on which opinions cannot differ. *See Dahl v. Bain Capital Partners, LLC*, 597 F. Supp. 2d 211, 213 (D. Mass. 2009). Additionally, Plaintiff's state law claims, the

---

[5] Given the extraordinary nature of the writ of mandamus, once the *Balintulo* panel determined that there was one other adequate means for relief, it was required to end its analysis there. *See Cheney v. United States Dist. Court*, 542 U.S. 367, 380-81 (2004) (explaining that "three conditions must be satisfied before [the writ] may issue," the first of which is that "the party seeking issuance of the writ must have no other adequate means to attain the relief he desires – a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process") (internal quotations omitted). Instead, the panel effectively exercised the very mandamus power it said it did not have by (incorrectly) directing the district court on how to rule on the merits. Regardless, as Plaintiff already explained, and which Defendant is unable to dispute, the *Balintulo* panel solely rejected Plaintiff's allegations of conduct in the United States because it consisted of steps to circumvent the sanctions regime, which the complaint did not "tie" to the relevant human rights violations. 2013 U.S. App. LEXIS 17474, at *49.

discovery for which would substantially overlap with discovery required for the ATS claims, would be unaffected by the Court of Appeals' ruling on the application of *Kiobel*. Dkt. 69 at 10.

## II. Defendant Fails to Demonstrate "Clear Error" in the Court's Denial of Certification for Review of its Application of *Sosa*

Defendant presents no new arguments or authorities in support his contention that the Court was clearly erroneous in denying § 1292(b) certification of its application of *Sosa v. Alvarez-Machain,* 542 U.S. 692 (2004). Instead, Defendant restates his previous arguments and mischaracterizes Plaintiff's briefing.

Contrary to Defendant's assertion, Plaintiff has never "rel[ied] on the Rome Statute to establish the existence and content of a supposed international norm against 'persecution' on sexual orientation and transgender grounds," Def. Br. at 8, but instead has consistently referred to the Rome Statute's articulation of persecution as reflecting the well-established norm as it has existed in customary international law at least as far back as Nuremberg, *see* dkt. 69 at 12, dkt. 38 at 25-28. Nor does Plaintiff "tr[y] to supplement the Rome Statute's definition of 'persecution' *solely with* decisions of a regional tribunal, the International Tribunal for the Former Yugoslavia ("ICTY")." Def. Br. at 8 (emphasis added). Plaintiff simply used its brief in opposition to Defendant's motion for interlocutory review to respond to the only argument Defendant raised (incorrectly) – that one ICTY decision purportedly "confirm[ed] the lack of universal agreement on the existence and content of 'persecution,'" dkt. 65 at 13-14 – not to repeat Plaintiff's prior detailed analysis of the historical and widespread acceptance of the existence and contents of the norm of persecution under international law, *see* dkt. 38 at 25-44.

Likewise, Defendant offers no new argument or support for his contention that the norm against persecution must include a "specific[] prohibit[ion of] the 'denial of fundamental rights'…based upon sexual orientation or transgender status." Def. Br. at 8. Plaintiff has already amply demonstrated "that customary international law does not 'limit the type of group that may

be targeted for persecution,'" dkt. 69 at 14 (citing dkt. 59 (Order on Motion to Dismiss) at 27-28 and dkt. 38 at 28-31), and this Court has agreed, dkt. 59 (Order on Motion to Dismiss) at 27-28.[6] Lastly, Plaintiff's "silence" on the lack of recognition by many nations of sexual orientation and gender identity as a specific ground of discrimination does not, as Defendant asserts, "speak[] volumes." Def. Br. at 9. Plaintiff simply does not want to waste the Court's time by re-litigating Defendant's assertions on this point which Plaintiff has already extensively briefed, dkt. 38 at 29-44, and which the Court found to be "specious," dkt. 59 (Order on Motion to Dismiss) at 28.

### III. Defendant Fails to Demonstrate "Clear Error" in the Court's Denial of Certification for Review of its Ruling that His Actionable Conduct Falls Outside of the Protections of the First Amendment

Defendant makes a vague effort to cast as clear error the Court's denial of Defendant's § 1292(b) motion to certify its ruling on Defendant's First Amendment arguments. In doing so, Defendant chooses the novel approach of attacking things that Plaintiff supposedly did *not* say. Def. Br. at 10 ("SMUG thus says nothing about the authorities that hold such conduct is not criminal but protected as a matter of law.") As Defendant does not elaborate, it is difficult to discern what he is referring to here as Plaintiff has extensively addressed all relevant authorities in its opposition to Defendant's motion to dismiss and in its opposition to Defendant's § 1292(b)

---

[6] Defendant's attempt to equate the persecution suffered by Plaintiff with "the prohibition of polygamy" is a red herring. Persecution, including that alleged by Plaintiff, constitutes the severe and widespread or systematic denial, based on identity, of multiple fundamental rights that Defendant does not (and cannot) dispute are clearly defined norms in international law, including the rights to equality and non-discrimination, *see* dkt. 38 at 29-32, and the rights to life, liberty, security of person, freedom of expression and assembly, and freedom from arbitrary arrest, detention, and cruel, inhuman and degrading treatment, *see* dkt. 38 at 63-64. Any group of people, however defined as this Court noted, dkt. 59 (Order on Motion to Dismiss) at 25-28, would be protected against such a targeted campaign of persecution that seeks to systematically exclude them from political life, from lifesaving health care and other basic social services, and from protections against cruel, inhuman and degrading treatment, because of their association or perceived association with a particular group. The norm against persecution and the reason for its gravitas as a crime against humanity in international law exists to protect the rights to equality and non-discrimination and other basic, fundamental rights of a disfavored group against systematic deprivation.

motion. Dkt. 38 at 14-19 and dkt. 69 at 15-18. Plaintiff's allegations and arguments have not changed. Whatever can be said of Defendant's argument on this point, it articulates no clear error in the Court's denial of his motion for certification under § 1292(b).

### IV. Defendant Fails to Demonstrate "Manifest Injustice" in the Court's Exercise of its Discretion to Deny Certification for Interlocutory Review

Defendant fails to demonstrate any prejudice to himself and interposes vague prejudice to the foreign policy interests of the United States as warranting interlocutory review – again operating in the realm of things Plaintiff did not say. Defendant does so by misrepresenting the only document in evidence – Plaintiff's proposed joint discovery plan drafted based on its conference with Defendant's counsel. *Compare* Def. Br. at 10-11 *with* dkt. 69-2 at I(f). Defendant further suggests that Plaintiff will not be prejudiced by interlocutory delay because of the length of time of some ATS litigation. The fact that litigation may "routinely tak[e] many years, often over a decade, to resolve," Def. Br. at 11, does not mean that its resolution should be further delayed or, perhaps more to the point, that discovery should necessarily take years to complete.

### CONCLUSION

For the foregoing reasons, Defendant's motion for the Court to reconsider its denial of certification for interlocutory appeal (dkt. 71) of its order denying Defendant's motion to dismiss should be denied.

Dated: October 8, 2013                                          Respectfully submitted,

Luke Ryan                                                                  /s/ Pamela Spees
(Bar No. 664999)                                                    Pamela C. Spees, *admitted pro hac vice*
100 Main Street, Third Floor                                 Baher Azmy, *admitted pro hac vice*
Northampton, MA 01060                                      Jeena Shah, *admitted pro hac vice*
Tel. (413) 586-4800                                               Center for Constitutional Rights
Fax (413) 582-6419                                                666 Broadway, 7th Floor
lryan@strhlaw.com                                                New York, NY  10012
                                                                              212-614-6431 - Phone
*Attorneys for Plaintiff*                                         212-614-6499 - Fax
                                                                              pspees@ccrjustice.org

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that the foregoing was filed electronically, that it will be served electronically upon all parties of record who are registered CM/ECF participants via the NEF, and that paper copies will be sent to any parties indicated on the NEF as non-registered participants on October 8, 2013.

                                                                                  */s/Pamela Spees*
                                                                                   Pamela Spees