UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SEXUAL MINORITIES UGANDA,       )
                                )
            Plaintiff           )
       v.                       )       Civil Action No. 12-30051-MAP
                                )
SCOTT LIVELY, individually and as )
President of Abiding Truth Ministries, )
                                )
            Defendant           )

MEMORANDUM AND ORDER WITH REGARD TO
THE PARTIES' COUNTERVAILING SUBMISSIONS REGARDING
A PROPOSED PROTECTIVE ORDER (Document No. 96)
February 14, 2014

NEIMAN, M.J.

The court has been asked to resolve Plaintiff Sexual Minorities Uganda's and Defendant Scott Lively's dispute with respect to a proposed protective order which would govern the discovery process now underway. In short, Plaintiff is wary of placing individuals in Uganda in significant jeopardy by the very nature of the discovery process, while Defendant wants to engage in discovery unfettered by the strictures Plaintiff seeks to impose. Although Defendant agrees to a number of paragraphs in the order proposed by Plaintiff, the parties hotly contest many of its provisions, a contest made particularly difficult because of the transnational nature of the litigation.

I. BACKGROUND

This underlying case concerns Plaintiff's complaint that Defendant, in concert with others and through actions taken both here and abroad, has fomented an

atmosphere of repression against lesbian, gay, bisexual, transgender and intersex ("LGBTI") people in Uganda.  When denying Defendant's motions to dismiss the complaint, District Judge Michael A. Ponsor held, among other things, that Plaintiff has stated a claim against Defendant for persecution that amounts to a crime against humanity.  (See August 14, 2013 Memorandum and Order Regarding Defendant's Motions to Dismiss (Document No. 59), at 30.)  "In particular," Judge Ponsor found, "Plaintiff has set out plausibly that Defendant worked with associates within Uganda to coordinate, implement, and legitimate 'strategies to dehumanize, demonize, silence, and further criminalize the [Ugandan] LGBTI community.'"  (Id. at 34-35 (quoting Plaintiff's Amended Complaint (Document No. 27) at ¶ 27).)

Of course, as Judge Ponsor indicated, "all these allegations will need to be proved at trial to entitle Plaintiff to a verdict."  (Id. at 35.)  But the allegations, together with Judge Ponsor's comprehensive ruling, do provide background to the instant dispute over a protective order.  In essence, Plaintiff is concerned that Defendant could engage in the very type of activity which it alleges harmed the LGBTI community in Uganda. Defendant, in turn, dismisses Plaintiff's claims as overblown and is concerned that the protections Plaintiff proposes would undermine his ability to defend himself.

With this in mind, this court denied without prejudice Plaintiff's original motion for a protective order and directed the parties to provide a joint document setting forth the provisions upon which they do agree as well as those upon which they do not, together with their countervailing proposals for the latter.  In setting this task, the court provided

some guidance. It indicated that it was not inclined to accept an attorney's eyes-only provision given that Defendant's counsel would no doubt need to communicate with him as a sole defendant uniquely positioned to assist in his defense. The court was also concerned about shackling Defendant's investigation of facts and witnesses in Uganda. The court was equally concerned, however, that Defendant betrayed an insufficient understanding of how he could run afoul of his intended compliance with an even more carefully crafted protective order. The parties appear to have been able to take some of this guidance into account when offering the proposed order presently before the court, but significant differences remain which the court will address *seriatim*.

## II. DISCUSSION

The parties' dispute is complicated by the nature of the protections at issue. This is by no means the usual case where both parties merely seek to protect proprietary information, *e.g.*, trade secrets. Rather, this is a case in which one party, Plaintiff, seeks to protect individuals from the type of danger and retribution it asserts Defendant promoted in Uganda. Judge Ponsor, it must be remembered, found the bases of these concerns plausible, although as yet unproven. Still, Defendant, to mount his defense, does need to investigate highly sensitive matters without undue trammels.

The court has resolved the various issues concerning a protective order by either accepting one or the other party's proposal or by providing substitute language of its own. In doing so, the court has chosen at times to err on the side of caution, open to amending the protective order if certain provisions prove to be too burdensome or

unwieldy.

1.

First, the court accepts Defendant's counter-proposal with respect to the last sentence of paragraph 3, without objection by Plaintiff.

2.

Second, the court approves paragraph 4(b) as proposed by Plaintiff, finding that it reaches a proper balance between Defendant's ability to effectively investigate facts relevant to this action and the security concerns of Plaintiff's members and witnesses. If, in a particular instance, Defendant believes that he needs clarification as to whether one of his investigators with whom he wishes to share "confidential discovery material" is "employed by or affiliated with any named co-conspirator," he may seek relief from the court if unable to resolve the issue directly with Plaintiff.  Further, as Plaintiff argues, the five person limit in paragraph (b)(iv) only applies to the number of investigators who may have access to confidential discovery material, not the overall number of investigators which each party may utilize.  Either party, of course, may seek to increase that number by application to the court; as the last sentence of the order reads, the order is "[s]ubject to further modification by the court."

3.

The court will order that paragraph 4(c) read as follows, which differs somewhat from both Plaintiff's and Defendant's proposals:

> (c) outside photocopying, data processing, graphic production, stenographers or videographers engaged by the parties or their counsel of record to assist

in this Action, provided that the written consent of the Designating Party shall be first obtained if an aforementioned individual resides outside the United States, which consent shall not be unreasonably withheld.

The court believes that any problem regarding the enforcement of the protective order can be minimized with respect to individuals outside its jurisdiction if the parties can reasonably agree to the designation of these particular individuals.

4.

For similar reasons as those set forth above, the court will let stand the provisions in paragraph 4(d) as proposed by Plaintiff with regard to both (1) affiliates of co-conspirators and (2) the number of experts. However, the court agrees with Defendant that an expert need not be "retained" in order to be provided confidential discovery material when otherwise appropriate. A retainer requirement can been easily evaded and the number of experts is quite limited. Accordingly, the first phrase in paragraph 4(d) shall read as follows: "experts retained and/or consulted by counsel of record in this action."

5.

Paragraph 4(e) shall read as follows:

> Any person, witness or potential witness who, in the good faith belief of a party and its counsel, may possess discoverable information about the credibility or veracity of any Confidential Discovery Material, provided that reasonable prior notice is given to counsel for the Designating Party. Individuals shown Confidential Discovery Material pursuant to this subparagraph shall not be allowed to retain copies.[1]

---

[1] The court defines "reasonable prior notice" as sufficient to enable a Designating Party to seek this court's protection.

As rewritten, this subparagraph addresses Defendant's concerns that Plaintiff's proposal would preclude non-testifying witnesses from being shown confidential discovery material under any circumstance. On the other hand, the court does not adopt that part of Defendant's counter-proposal which would eliminate notice to the designating party, since such a provision would enable a party to disclose confidential material without any limit whatsoever. Accordingly, reasonable prior notice to, albeit not clearance by, the designating party is appropriate; this is, after all, confidential material.[2]

6.

For many of the reasons asserted by Defendant, the court agrees that a new subparagraph 4(i) should be added. However, contrary to Defendant's proposal -- which would permit disclosure to *any* appointed officer, director, or employee of Abiding Truth Ministries[3] -- subparagraph 4(i) will read as follows:

> (i) one designated officer and one designated director of Abiding Truth Ministries, provided that these designees are subject to the jurisdiction of this court.

Defendant's proposal, in contrast, could lead to an open-ended disclosure of confidential materials.

7.

With one addition, the court is prepared to accept the provisions in paragraph 5

---

[2] Defendant's concerns with the interplay between this subparagraph and paragraphs 5 and 6 of the protective order are discussed below.

[3] Abiding Truth Ministries is not a defendant in this case.

as proposed by Plaintiff.  Given the fact that the court, at Defendant's request, has expanded the scope of individuals to whom Confidential Discovery Material may be provided, it remains important that those individuals also be subject to the provisions of the protective order.  The court is not persuaded by Defendant's argument that requiring individuals to whom confidential discovery material is revealed to endorse the order "makes no sense and is unworkable."  Simply put, the court does not accept at face value Defendant's argument that "the average and disinterested person in Uganda will have no interest in reading a lengthy legal document in the English language, understanding it, and signing documents submitting to the jurisdiction of a foreign court, just to retry or rebut factual claims made by SMUG constituents."  If, as Defendant speculates, witnesses will decline en masse to speak with Defendant's counsel, he can seek alternative relief from this court.  To be sure, enforcement of the endorsement against foreign individuals may be problematic but, as Plaintiff argues, the required endorsement will provide notice to interviewees of the gravity of the confidentiality provisions.

     Defendant's counterproposal, however, does raise an issue which neither party adequately addresses in their arguments, namely, interviewing witnesses in a manner other than in-person.  Given the transnational nature of this case, the court assumes that such interviews may be necessary, thereby raising the issue of a distant interviewee endorsing the protective order.  To be sure, as Judge Ponsor pointed out in his August 14, 2013 Memorandum and Order, "read fairly, the Amended Complaint

alleges that the tortious acts committed by Defendant took place to a substantial degree within the United States, over many years, with only infrequent actual visits to Uganda." (Id. at 38.) Accordingly, the number of necessary interviews in Uganda may be less than this court expects. Still, there being little doubt that some interviews of Ugandans may not be in-person, the issue of endorsements needs to be addressed.[4]

Given these countervailing concerns and upon reflection, the court will require that the following be added to the end of paragraph 5 proposed by Plaintiff:

> If a party's counsel wishes to interview an individual residing in a foreign country in a manner other than in-person and that individual does not have access to electronic mail or does not wish to provide interviewing counsel with an email address, but counsel needs to disclose Confidential Discovery Material to that individual, counsel shall first inform opposing counsel and they shall endeavor to come to an agreement with opposing counsel regarding the manner the individual's acknowledgment of the terms of the Protective Order (and a willingness to be bound thereby) may be accomplished, including but not limited to recording the relevant portion of the interview.

The parties are free to come to any other agreement which accomplishes this end.

8.

---

[4] This would not be as problematic an issue if the amount of confidential discovery material was not significant; at the present time, however, the court is unaware of the extent to which the parties, Plaintiff in particular, will invoke confidentiality. Nor would this be much of an issue were "Confidential Discovery Material" defined as including only documents, whether electronically stored or not; if that were the case, it would be relatively simple to have an interviewee endorse the confidentiality order at the same time as receiving a copy of a confidential document for review. The definition of such material, however, includes the *content* of such documents, which could readily be passed on by telephone to an interviewee in Uganda.

The court has determined, for two reasons, that paragraph 6 of Plaintiff's proposal -- which concerns an "Anti-Homosexuality Bill" which passed the Ugandan Parliament in December of 2013 -- should not be included in the protective order at this time.  First, as Plaintiff itself acknowledges, neither party as of January 7, 2014, had access to the bill as passed and, thus, its specific provisions are unknown; thus, it would be difficult for the court to assess the propriety of the proposed paragraph, which would preclude any portion of confidential discovery material to be revealed to an individual who might be required by the bill to report its content to Ugandan authorities.

Second, the court has taken judicial notice of recent news reports which indicate that Uganda's President, Yoweri Museveni, has declined to sign the bill, albeit with reference to supposedly inadequate parliamentary procedures not civil rights concerns.  *See Uganda President Yoweri Museveni Blocks Anti-gay Law*, BBC NEWS, Jan. 17, 2014, *available at* http://www.bbc.co.uk/news/world-africa-25775002; Faith Karimi, *Gays and Lesbians 'Sick,' Ugandan President Says in Blocking Anti-gay Bill*, CNN.COM, January 17, 2014, *available at* http://www.cnn.com/2014/01/17/world/africa/uganda-anti-gay-bill-rejected/; Robyn Dixon, *Ugandan President Slams Gays While Refusing to Sign Anti-gay Law*, LOS ANGELS TIMES, January 17, 2014, *available at* http://www.latimes.com/world/worldnow/la-fg-wn-uganda-homosexuals-museveni-20140117,0,7172231.story#axzz2t8ztWAh0.  Accordingly, the bill with

which Plaintiff is understandably concerned is not in effect.  Of course, should such a bill be enacted into law, whether by parliamentary or presidential action, the parties shall halt all further disclosure of any confidential discovery material to individuals who may be referenced in the law as required to reveal the information, whereupon the court will be prepared to address any party's proposal for additional protection.

9.

The court approves paragraph 9 as proposed by Plaintiff, finding its provisions appropriate and reasonable with respect to the use of confidential discovery material in a foreign court or administrative body.

10.

The court concludes that the burdens of designating confidential material after its production should fall more on the designating party than is provided in Plaintiff's proposed paragraph 11.  Accordingly, paragraph 11 shall read as follows:

> If at any time prior to the trial of this action, a party realizes that some portion(s) of discovery material that that party had previously produced without limitation should be designated as CONFIDENTIAL, that party may so notify the other party in writing and, within ten (10) business days of giving notice, provide the other party with a replacement version of such discovery material that bears the "CONFIDENTIAL" designation.  If the notified party objects to the CONFIDENTIAL designation, that party shall so notify the Designating Party in writing within three days of receiving the replacement version.  If the parties are unable to resolve their differences, the DESIGNATING PARTY, within fourteen (14) days of receiving the objection, shall either remove the designation or move the Court for a determination that the designation is proper.  If a motion is not timely filed, the designation

shall be deemed null and void.

In fashioning this provision, the court agrees with Defendant that the parties should exercise care to make appropriate confidentiality designation prior to disclosure.

11.

The court concludes that paragraph 16, which addresses inadvertent or unintentional disclosure of material subject to a claim of privilege, should be included as is in the instant protective order, rather than a separate order, if for no other reason than to move discovery along at this juncture.

12.

The court believes that the provisions of paragraph 18 as proposed by Plaintiff are appropriate with respect to individuals not covered by paragraph 4. That said, the court notes that it has added non-testifying witnesses to paragraph 4, who, thereby, would not be covered by paragraph 18.

13.

In light of the other provisions in the protective order, as specified herein, the court finds Exhibit A appropriate.

### III. CONCLUSION

The parties shall revise the Protective Order in accord herewith, execute it and provide it to the court for its endorsement no later than February 28, 2014. IT IS SO ORDERED.

DATED: February 14, 2014

      /s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge