UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SEXUAL MINORITIES OF UGANDA, Plaintiff | ) | |
| v. | ) | Civil Case No. 3:12-30051-MAP |
| SCOTT LIVELY, Individually and as President of Abiding Truth Ministries, Defendant | ) | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION TO AMEND EXISTING PROTECTIVE ORDER AND DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO PRODUCE UNREDACTED DOCUMENTS
(Docket Nos. 149 & 173)

## I. INTRODUCTION

Plaintiff Sexual Minorities of Uganda ("Plaintiff") filed this action on March 14, 2012. Plaintiff is an umbrella organization based in Kampala, Uganda, which represents the interests of its member organizations in advocating for the rights of lesbian, gay, bisexual, transgender, and intersex individuals ("LGBTI individuals") in Uganda (Dkt. No. 27, ¶ 1). Plaintiff's amended complaint alleges, in summary, that Defendant has conspired with others to persecute LGBTI individuals in Uganda (*id*.). The amended complaint states three related claims under the Alien Tort Statute, 28 U.S.C. § 1350, for persecution as a crime against humanity, as well as claims of civil conspiracy and negligence arising under Massachusetts law (*id*. at ¶¶ 236-262). Now before the court are Plaintiff's Motion to Amend the Order Regarding Confidentiality of Certain Documents (Dkt. No. 149) and Defendant's Motion to Compel Plaintiff to Produce Unredacted Documents (Dkt. No. 173). For the reasons set forth below, Defendant's motion to compel is ALLOWED in part and DENIED in part. Plaintiff is entitled to redact material that is protected by the attorney-client or the associational privilege from documents it produces in this case. Other documents should be produced without redactions. Plaintiff's motion to amend the

existing protective order to designate certain documents for review by attorney's eyes only ("AEO") is DENIED with the understanding that Plaintiff is entitled to redact any privileged material from documents that it seeks to produce subject to an AEO designation.

## II. RELEVANT PROCEDURAL BACKGROUND

In or around February 2014, the parties brought to this court's attention their dispute about the terms of a protective order proposed by Plaintiff which was intended to govern the discovery process in this case. The dispute was referred to the Honorable Kenneth P. Neiman for resolution. *See Sexual Minorities of Uganda v. Lively*, Civil Action No. 12-30051-MAP, 2014 WL 588009, at *1 (D. Mass. Feb. 14, 2014). Judge Neiman indicated to the parties that he was not inclined to accept an AEO provision in a proposed protective order "given that Defendant's counsel would no doubt need to communicate with him as a sole defendant uniquely positioned to assist in his defense." *Id.* Notwithstanding Judge Neiman's expressed reservations, the protective order that entered, after his careful consideration of the parties' competing contentions, provided, among other things, that nothing in the order "preclude[d] a party from making applications to the Court for heightened confidentiality provisions, including 'attorneys eyes only' protections, for specific Discovery Material, upon a showing of particularized and compelling need" (Dkt. No. 106 at 11). Plaintiff now seeks to amend the existing protective order by adding a provision that permits production of certain documents subject to an AEO designation. Plaintiff has indicated that, if its motion is allowed, it intends to produce some 220 documents under an AEO designation.[1] Defendant opposes the motion, contending that the Court has already rejected Plaintiff's request for an AEO designation for production, and that

[1] Following a hearing on plaintiff's motion to amend the existing protective order, Plaintiff provided copies of these documents and video recordings to the court for *in camera* inspection.

Plaintiff has failed to make the requisite showing of particularized and compelling need that would justify denying Defendant access to the evidence against him (Dkt. No. 159 at 1, 4).

Leaving aside the 220 documents that is seeks to produce subject to an AEO designation and that have not yet been produced, the parties agree that Plaintiff has produced in the neighborhood of 25,000 pages in response to Defendant's 196 document production requests (Dkt. No. 198 at 1; Dkt. No. 173 at 2). Defendant represents that these documents include "thousands of redactions" and contends that, particularly in light of the protective order, all of these redactions are unjustified and unjustifiable. Defendant seeks an order requiring Plaintiff to produce unredacted copies of all documents it has already produced (Dkt. No. 174 at 9).[2] Plaintiff opposes Defendant's motion on the grounds that the redactions are of material that is privileged, or that is not relevant to the pending action and that it is entitled, under the terms of the protective order and governing law, to make such redactions (Dkt. No. 198 at 1-3).

## III. Discussion

### 1. Defendant's motion to compel production of unredacted documents

In its opposition to Defendant's motion seeking the production of unredacted documents, Plaintiff explains that it has redacted information from its production on the following four bases:

[2] Defendant also complains that Plaintiff's document production was not organized to correspond to the categories of information requested by Defendant and that Plaintiff redacted some information from a document explaining the sources of the documents it produced (Dkt. No. 173 at 2). Plaintiff responds that it produced its documents as kept in the ordinary course of business and represents that its redactions to the document explaining the sources of its production were minimal and that the redacted information was protected by the associational privilege (Dkt. No. 198 at 15). On June 24, 2015, the court extended the non-expert discovery deadline to August 30, 2015 so that the parties could complete taking the depositions that had already been noticed. In the court's view, even if there were deficiencies in Plaintiff's document production, a point on which the court makes no ruling, Defendant has had adequate time to review the documents for purposes of preparing for depositions.

- The attorney-client privilege and the work product doctrine;
- The associational privilege protected by the First Amendment to the United States Constitution and parallel provisions in the Ugandan Constitution and the International Covenant on Civil and Political Rights;
- Irrelevance and the concern that disclosure would reveal aspects of Plaintiff's and non-parties' irrelevant but private operations; or
- Concern that the redacted information would reveal Plaintiff's and non-parties' confidential strategies for combating reenactment of an Anti-Homosexuality Bill in Uganda (Dkt. No. 198 at 2-3).

i. Attorney-client and work product privilege

As to redactions on the basis of the attorney-client and work product privileges, the protective order entered in this case provided that it was not to be construed as a waiver by any party of the right to withhold information on the grounds of any legally cognizable privilege. It is well-settled that, with narrow exceptions not likely to be applicable here, a party is not required to disclose the content of attorney-client communications or work product (defined as an attorney's written materials and mental impressions) in discovery. *See, e.g., Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 17 (1st Cir. 2012). Redactions on this basis are appropriate under the applicable law and the terms of the protective order. Defendant has not claimed that Plaintiff has improperly invoked the attorney-client and work product privileges. The court will not order production of material that Plaintiff has indicated was redacted on the basis of the attorney-client privilege.

ii. Associational Privilege

As to Plaintiff's so-called "personal data" redactions, Judge Neiman noted in his ruling on the parties' dispute about the terms of the protective order that "[t]his is by no means the usual case where both parties merely seek to protect proprietary information, *e.g.*, trade secrets. Rather, this is a case in which one party, Plaintiff, seeks to protect individuals from the type of danger and retribution it asserts Defendant promoted in Uganda." *Sexual Minorities of Uganda*, 2014 WL 588009, at *1. Plaintiff represents that redactions designated "personal data" are of information identifying individuals and entities associated with it or who had provided some level of support, such as donors, supporters, and affiliates; email addresses for listserves used by Plaintiff and its associates; and personal telephone numbers of potential witnesses for whom business telephone numbers have been provided.[3] Plaintiff further represents that notwithstanding its concerns about the personal safety of members of its constituent organizations, it has identified some 138 witnesses to events about which there are allegations in the amended complaint (Dkt. No. 198 at 3). While Plaintiff may not clearly have articulated its basis for these "personal data" redactions before Defendant filed its motion, Plaintiff now asserts that these redactions are justified by an associational privilege founded on the First Amendment (and, here, cognate provisions in the Ugandan constitution). Plaintiff further contends that its internal communications about strategies to defeat enactment of an Anti-Homosexuality Bill in Uganda are protected by the same associational privilege. The court agrees.

"[F]reedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth

[3] Plaintiff has also redacted as "personal information" information about its bank account. To the extent these redactions are of account numbers or other information that could be used for purposes of identity theft, such redactions are appropriate. Where Plaintiff seeks compensatory damages for losses alleged caused by Defendant's conduct, information about Plaintiff's financial status cannot be redacted and must be disclosed to Defendant, subject to the terms of the protective order.

Amendment." *NAACP v. Alabama*, 357 U.S. 449, 459 (1958). Courts in this country have recognized that "[w]hen . . . discovery would have the practical effect of discouraging the exercise of [constitutionally protected] associational rights, the party seeking such discovery must demonstrate a need for the information sufficient to outweigh the impact on those rights." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2009); *see also Grandbouche v. Clancy*, 825 F.2d 1463 (10th Cir. 1987); *In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1151-1152 (D. Kan. 2010). Information that may be privileged on the basis of associational rights includes identities of rank and file members and similarly situated individuals, *see NAACP*, 357 U.S. at 462 ("[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association"); mailing lists and lists of conferences attendees, *see Perry*, 591 F.3d at 1153, 1155; *Grandbouche*, 825 F.2d at 1466-1467, contributor lists, and "past political activities of plaintiffs and of those persons with whom they have been affiliated." *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 2 (D.D.C. 2002). If the prerequisites for its application are established, the associational privilege also protects internal policy or campaign communications concerning contested political issues. *See Perry*, 591 F.3d at 1162.

The parties have not addressed the choice of law question raised by Plaintiff's invocation of the associational privilege as protection for communications by and among Ugandan citizens. Where allegedly privileged communications take place in a foreign country, a federal district court "defers to the law of the country that has the 'predominant' or 'the most direct and compelling interest' in whether those communications should remain confidential *unless that foreign law is contrary to the public policy of this forum.*" *Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002) (emphasis supplied) (quoting *Golden Trade, S.r.L. v.*

*Lee Apparel Co.*, 143 F.R.D. 514, 522 (S.D.N.Y. 1992)). Plaintiff represents that the Ugandan constitution protects the associational rights of the members of its constituent organizations. However, the Ugandan Anti-Homosexuality Bill that was enacted and then annulled on technical grounds criminalized advocating for the rights of LGBTI individuals (Dkt. No. 151). Given the level of support for such legislation among Ugandan officials and the fact that same sex relations have been criminalized, as shown by Plaintiff's various submissions, it appears very unlikely that Ugandan law would recognize an associational privilege in litigation protecting the associational rights of LGBTI individuals. Because, as discussed below, a risk of inadvertent disclosure of discovery materials cannot be eliminated, the failure to recognize such a privilege in this litigation could have severe consequences for LGBTI individuals in Uganda and would, in the court's view, be contrary to the public policy of this forum.

A party asserting a claim of associational privilege must demonstrate a *prima facie* showing that providing the requested discovery would infringe on the protected associational right. "'This *prima facie* showing requires [the party] to demonstrate that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights.'" *See Perry*, 591 F.3d at 1160 (quoting *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 350 (9th Cir. 1988)). If such a *prima facie* showing is made, then the question is whether the party seeking discovery "has demonstrated an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463.

Plaintiff has made a sufficient *prima facie* showing here. "Privacy is particularly important where the group's cause is unpopular; once the participants lose their anonymity, intimidation and suppression may follow." *Black Panther Party v. Smith*, 661 F.2d 1243, 1265 (D.C. Cir. 1981); *see also Int'l Action Ctr.*, 207 F.R.D. at 3. It is uncontroverted that "on past occasions, revelation of the identity of [LGBTI individuals in Uganda] has exposed these [individuals] to economic reprisal, . . . threat of physical coercion [and arrest], and other manifestations of public [and official] hostility." *NAACP*, 357 U.S. at 462. Nor can there be any doubt about a negative reaction by members of the Ugandan government to disclosure of strategies to combat discrimination or enactment of the Anti-Homosexual Bill (Dkt. No. 151 at 3). The potential for harm cannot be wholly mitigated by the existing protective order. Under the terms of the protective order, documents may be passed on to investigators and experts, including investigators in Uganda, and may be shown to witnesses, including witnesses in Uganda (Dkt. No. 106 at 3-4). As this court has acknowledged, enforcement of the terms of the protective order in Uganda would be problematic. *See Sexual Minorities of Uganda*, 2014 WL 588009, at *3. Even assuming compliance with the protective order by all parties, witnesses, investigators and experts, it is not possible to guard against all possibility of exposure. *See Perry,* 591 F3d at 1164 (protective order would ameliorate but not eliminate harms threatened by disclosure); *cf. Int'l Action Ctr.*, 207 F.R.D. at 3 (rejecting argument that protective order could adequately assuage plaintiff's fears about disclosure).

The requesting party's "interest in disclosure [of the requested information] will be relatively weak unless the information goes to 'the heart of the matter' that is, unless it is crucial to the party's case." *Black Panther Party,* 661 F.2d at 1268. Defendant claims in conclusory fashion that Plaintiff's redactions require action by this court to preserve his ability to

investigate, develop and mount his defense (Dkt. No. 173 at 5). He has not demonstrated that the previously undisclosed identities of donors, supporters, and affiliates of Plaintiff are crucial to his defense; nor has he made such a showing with respect to email addresses for listserves used by Plaintiff and its associates; or personal telephone numbers of potential witnesses for whom business telephone numbers have been provided. It follows that Plaintiff is entitled to redact this information from its document production. *See id.*

In *Perry*, the Ninth Circuit Court of Appeals held that information very similar in nature to Plaintiff's communications about its strategies to defeat reenactment of an Anti-Homosexuality Bill in Uganda was protected by the associational privilege. *See Perry*, 591 F.3d at 1161-1163. Notwithstanding the fact that the information was relevant – as relevance is defined for purposes of discovery – to the plaintiff's claims, the *Perry* court held that the information did not need to be produced because the plaintiffs had not shown a sufficient need for it. *See id.* at 1165. Here, the record supports the conclusion that the potential chilling effect of being required to produce information about Plaintiff's strategies for defeating reenactment of an Anti-Homosexuality Bill could be substantial given threats made by Ugandan officials. While relevant, the information is not crucial to the defense against claims that are premised on conduct that occurred prior to July 2012, when the amended complaint was filed (Dkt. No. 27). For this reason, the court will not order production of unredacted documents where Plaintiff has redacted information about its current strategies for defeating reenactment of an Anti-Homosexual Bill based on a claim of associational privilege.

iii. Redactions based on lack of relevance

Finally, Plaintiff redacted information it deemed non-responsive and irrelevant from documents it produced (Dkt. No. 198 at 10-11). Relying on cases such as *Spano v. Boeing Co.*,

No. 3:06-cv-00743-DRH-DGW, 2008 WL 1774460 (S.D. Ill. 2008), Plaintiff claims that courts have found redactions appropriate when the information redacted was not relevant to the issues in the case (Dkt. No. 198 at 10). Defendant, for his part, relies on cases such as *Beverage Distribs., Inc. v. Miller Brewing Co.*, Nos. 2:08-cv-827, 2:08-cv-931, 2:08-cv-1112, 2:08-cv-1131, 2:08-cv-1136, 2010 WL 1727640 (S.D. Ohio Apr. 28, 2010) for the proposition that documents are to be produced as they are kept in the ordinary course of business, i.e., without redactions, and that there is no express or implied authorization for redaction in the applicable Federal Rules of Civil Procedure. *See id.* at *4. In the court's view, the weight of authority is on Defendant's side. Redaction of documents that are responsive and contain some relevant information should be limited to redactions of privileged information when, as in this case, there is a protective order restricting the use and dissemination of other sensitive information. *See id.* Furthermore, the court is concerned that Plaintiff has espoused an unduly narrow view of relevancy in other discovery disputes on which the court has ruled. Accordingly, to the extent Plaintiff has made redactions from documents it produced on the grounds that the redacted information was not, in its view, relevant, those documents will be produced without redactions except to the extent that those documents contain privileged material.

2. Plaintiff's motion to amend the protective order

By its motion, Plaintiff seeks to amend the existing protective order to add a provision that would allow it to produce on an AEO basis documents concerning its ongoing efforts to ensure security for the Ugandan LGBTI community and for a health clinic for that community; its communications with foreign governments aimed at enhancing security for the Ugandan LGBTI community; and videos, photographs and emails concerning a workshop raided in 2012

which, Plaintiff asserts, disclose its advocacy strategies for the LGBTI community and the identities of individuals who would be at risk were their identities publicly disclosed.

"[B]ecause a protective order is already in place limiting the use and dissemination of discovery materials, [Plaintiff] bears the burden of demonstrating why the current order is insufficient and a modification is necessary." *Avco Container Corp. v. Weyerhaeuser Co.*, No. 1:08-cv-548, 2009 WL 311125, at *5 (W.D. Mich. Feb. 9, 2009). The use of an AEO designation "is a drastic remedy given its impact on the party entitled to the information." *Ragland v. Blue Cross Blue Shield of North Dakota*, No. 1:12-cv-080, 2013 WL 3776495, at *1-2 (D.N.D. June 25, 2013) (collecting cases declining to authorize AEO designation).

Plaintiff has not shown a particularized and compelling need for confidentiality as to its information beyond the confidentiality provided by the existing protective order and the applicable privileges. The protective order provides that material designated as confidential can only be used for purposes of this litigation, will remain confidential after this case is concluded, and must be destroyed or returned to the producing party at the conclusion of the case (Dkt. No. 102, ¶¶ 3, 12). Defendant has not objected to any of Plaintiff's confidentiality designations and there is no evidence that Defendant has failed to comply with the terms of the protective order. Judge Neiman declined to include an AEO provision in the protective order out of concern for Defendant's right to participate in his defense, a concern that has not diminished. *See Sexual Minorities of Uganda*, 2014 WL 588009, at *1. To the extent Plaintiff seeks an AEO designation to protect the identities of individuals associated with Plaintiff's member organizations whose identities have not previously been disclosed, such information is protected by the associational privilege and need not be produced. The court is not persuaded, after an *in*

*camera* review, that Plaintiff has demonstrated a particularized and compelling need for an AEO designation as to the remaining content of the submitted documents and videos.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Plaintiff to Produce Unredacted Documents is GRANTED in part and DENIED in part. Plaintiff's Motion to Amend the Order Regarding Confidentiality of Certain Discovery Material is DENIED.

It is so ordered.

Dated: August 10, 2015

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
U.S. MAGISTRATE JUDGE