**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **SEXUAL MINORITIES UGANDA,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | **3:12-CV-30051-MAP** |
| | : | |
| **v.** | : | **JUDGE MICHAEL A. PONSOR** |
| | : | |
| **SCOTT LIVELY, individually and as president of Abiding Truth Ministries,** | : | **MAGISTRATE JUDGE KATHERINE A. ROBERTSON** |
| | : | |
| **Defendant.** | : | **ORAL ARGUMENT REQUESTED** |

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT SCOTT LIVELY'S SPECIAL MOTION TO DISMISS SMUG'S STATE LAW CLAIMS PURSUANT TO THE MASSACHUSETTS ANTI-SLAPP STATUTE**

Philip D. Moran (MA 353920)
265 Essex Street, Suite 202
Salem, Massachusetts 01970
T: 978-745-6085
F: 978-741-2572
philipmoranesq@aol.com

Mathew D. Staver†
Horatio G. Mihet†
Roger K. Gannam†
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854-0774
T: 407-875-1776
F: 407-875-0770
court@lc.org
hmihet@lc.org
rgannam@lc.org

†Admitted *pro hac vice*
Attorneys for Defendant

# INTRODUCTION

Defendant, Scott Lively ("Lively"), submits this memorandum of law in support of his Special Motion to Dismiss SMUG's State Law Claims Pursuant to the Massachusetts Anti-Slapp Statute ("Special Motion").[1] Lively has already demonstrated to this Court that SMUG's lawsuit is (and always has been) a brazen and direct assault on Lively's First Amendment rights. SMUG's goal has been to punish Lively for his speech and remove his voice from the public sphere, because it abhors Lively's religiously-motivated views on marriage, family, and homosexuality. To avoid its obvious head-on collision with the First Amendment, SMUG manufactured allegations of a hate-crime ring and far-reaching "conspiracy" to persecute LGBTI persons in Uganda, which was allegedly orchestrated and directed by Lively.

As shown in Lively's summary judgment briefing, all of SMUG's claims are subject to the U.S. Constitution, and must overcome the First Amendment, including its protections for both speech and petitioning.[2] (MSJ Br. at 83-119; MSJ Reply at 46-73.) Lively's First Amendment rights, in particular, are additionally protected under Massachusetts law, which raises the bar for SMUG's state law claims based on Lively's speaking and writing.

---

[1] Lively previously filed his Motion for Summary Judgment (dkt. 248, "MSJ"), and his Memorandum of Law in Support (dkt. 257, "MSJ Brief"), which includes Lively's Statement of Material Facts of Record as to Which There Is No Issue to Be Tried ("MF"). In response to Lively's MSJ, Plaintiff, Sexual Minorities Uganda ("SMUG"), filed a document (dkt. 270) comprising Plaintiff's Response to Defendant's Local Civil Rule 56.1 Statement of Facts ("D-MF"), and Plaintiff's Concise Statement of Material Facts of Record Omitted by Defendant ("PSOF"), and also filed a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (dkt. 292, "Opposition"). Lively filed a Reply Memorandum in Support of his MSJ (dkt. 305, "MSJ Reply"), and SMUG filed a Sur-Reply (dkt. 315, "Sur-Reply"). Lively cites herein to the foregoing summary judgment materials of record (and record materials cited therein) for all facts and other matters relevant to the Court's consideration of Lively's Special Motion.

[2] SMUG's ATS claims also must specifically satisfy the requirements of the Constitution's Offenses Clause, Article 1, Section 8, clause 10. (MSJ Br. at 80-83.)

As shown herein, SMUG's state law claims for civil conspiracy and negligence[3] (Compl., dkt. 27, at 58-59, ¶¶ 251-262) are based on Lively's exercise of his First Amendment rights. Accordingly, to save its state law claims from dismissal, the Massachusetts anti-SLAPP statute places the burden on SMUG to defeat Lively's Special Motion, which SMUG cannot do.

## LAW AND ARGUMENT

### I. SMUG'S STATE LAW CLAIMS SHOULD BE DISMISSED UNDER THE MASSACHUSETTS ANTI-SLAPP STATUTE BECAUSE THEY ARE BASED ON LIVELY'S EXERCISE OF FIRST AMENDMENT RIGHTS.

#### A. The Substantive, Burden-Shifting Provisions of the Massachusetts Anti-SLAPP Statute Apply to SMUG's State Law Claims Regardless of the Pending Motion for Summary Judgment.

The Massachusetts anti-SLAPP statute, Mass. Gen. Laws ch. 231, § 59H ("MASS"), applies to Massachusetts state law claims pending in federal court. *See Bargantine v. Mechanics Coop. Bank*, No. 13-1132-NMG, 2013 WL 6211845, *3 (D. Mass. Nov. 26, 2013) (citing *Godin v. Schencks*, 629 F.3d 79, 92 (1st Cir. 2010)). The First Circuit became the third federal appellate court to so hold in *Godin*:[4]

> Many states have enacted special statutory protections for individuals . . . named as defendants as a result of the exercise of their constitutional rights to petition the government. These anti-"SLAPP" ("strategic litigation against public participation") laws provide such defendants with procedural and substantive defenses meant to prevent meritless suits from imposing significant litigation costs and chilling protected speech. The two federal appellate courts that have addressed whether they must enforce these state anti-

[3] This Court previously recognized that SMUG's "state law negligence claim appears to be substantively the most fragile," because Lively's argument that there is no legally cognizable duty to avoid creating a "virulently hostile environment" "certainly has force." (Mem. Order Re: Def.'s Mot. Dismiss, dkt. 59 ("MTD Order"), at 78.) The Court also noted that "it will be difficult for Plaintiff to assemble facts during discovery to justify a finding of liability," and that "the First Amendment may make this count particularly difficult to defend at the summary judgment stage." (MTD Order at 78-79). The Court was right.

[4] The *Godin* court was construing the Maine anti-SLAPP statute. This Court has recognized, however, "[t]he Massachusetts anti-SLAPP statute is . . . in all respects identical to the Maine statute." *Bargantine*, 2013 WL 6211845, at *3.

> SLAPP statutes in federal proceedings have concluded that they must.

629 F.3d at 81.

The question whether to apply a state anti-SLAPP statute in a federal action is "not the classic *Erie* question" as to where to draw "the line between substance and procedure," but rather "falls into the special category concerning the relationship between the Federal Rules of Civil Procedure and a state statute that governs both procedure and substance in the state courts." *Id.* at 86. The *Godin* court concluded that, although the Maine anti-SLAPP statute "has both substantive and procedural aspects," it does "not attempt to answer the same question" as Federal Rule of Civil Procedure 12, governing motions to dismiss on the pleadings, and Rule 56, governing summary judgment. Accordingly, those federal rules "are not so broad as to cover the issues within the scope of [the anti-SLAPP statute]." *Id.* at 88-89. Rather, "[the anti-SLAPP statute] provides substantive legal defenses to defendants and alters what plaintiffs must prove to prevail." *Id.* at 89. "One of the substantive aspects of [the statute] shifts the burden to plaintiff to defeat the special motion." *Id.*[5]

Because the substantive, burden-shifting provisions of the MASS do "not attempt to answer the same question" as Rule 56, and serve an "entirely distinct function" from the summary judgment rule, *Godin*, 629 F.3d at 88-89, Lively's Special Motion is not made redundant or otherwise foreclosed by his pending motion for summary judgment. "A special motion to dismiss under the anti-SLAPP statute is not intended to be a substitute for a motion for summary judgment . . . ." *Burley v. Comets Cmty. Youth Ctr., Inc.*, 75 Mass. App. Ct. 818, 822, 917 N.E.2d 250, 255

[5] "In addition, [the anti-SLAPP statute] allows courts to award attorney's fees and costs to a defendant that successfully brings a special motion to dismiss, a statutory element we have previously determined to be substantive." *Godin*, 629 F.3d at 89.

(2009). To be sure, if this Court grants Lively's motion for summary judgment as to Plaintiffs' state law claims, this Special Motion would be moot. However, because the MASS shifts the burden to Plaintiffs to prove their claims (*see infra*, I.D)—a much higher burden than Rule 56 requires to defeat a motion for summary judgment—if this Court were to deny Lively's summary judgment motion the Court would still need to analyze and grant this Special Motion, under its own standard and burden.[6].

### B. The Procedural, Time-limiting Provisions of the Massachusetts Anti-SLAPP Statute Do Not Apply to Lively's Special Motion to Dismiss.

Not all of the anti-SLAPP statute's provisions survive the special *Erie* analysis. The sixty-day filing deadline does not apply in federal actions because it interferes with the permissive discovery procedures of Rule 56.

A statutory time-limit for filing a state anti-SLAPP motion is displaced by the Federal Rules. *See Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016) (holding 60-day time limit in California anti-SLAPP statute not applicable in federal court). In *Sarver*, the Ninth Circuit completed an analysis it began in its earlier anti-SLAPP case, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001), wherein it considered a corollary procedural aspect of the California statute limiting all discovery upon the filing of an anti-SLAPP motion. Because the

---

[6] Furthermore, another key difference between a summary judgment motion and an anti-SLAPP motion is that, unlike the denial of a motion for summary judgment, the denial of a special motion to dismiss under the MASS is immediately appealable. *See Godin*, 629 F.3d at 85 ("We conclude that the order at issue here involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'"); *Benoit v. Frederickson*, 454 Mass. 148, 152, 908 N.E.2d 714, 718 (2009) ("Regardless whether claims or counterclaims remain pending, '[t]he protections afforded by the anti-SLAPP statute against the harassment and burdens of litigation are in large measure lost if the petitioner is forced to litigate a case to its conclusion before obtaining a definitive judgment through the appellate process.'"); *Hewlett-Packard Co. v. Oracle Corp.*, 239 Cal. App. 4th 1174, 1184-85, 191 Cal. Rptr. 3d 807, 814-15 (2015) ("This means that however unsound an anti–SLAPP motion may be, it will typically stop the entire lawsuit dead in its tracks until an appellate court completes its review.")

"expedited procedure" of filing a special motion to dismiss, within 60 days of a complaint, cut off all discovery while the motion was pending, the *Metabolife* court held that the procedure conflicted with Federal Rule 56, which the Supreme Court has construed to entitle a non-moving party to discovery to prove the party's opposition to summary judgment. Thus, "[b]ecause the discovery-limiting aspects of [the anti-SLAPP statute] collide with the discovery-allowing aspects of Rule 56, these aspects of [the anti-SLAPP statute] cannot apply in federal court." *Id.* at 846 (internal quotation marks and citation omitted).

The MASS contains the same discovery-limiting provisions that the Ninth Circuit analyzed in the California statute. *See* MASS ("All discovery proceedings shall be stayed upon the filing of the special motion under this section . . . . Said special motion to dismiss may be filed within sixty days of the service of the complaint . . . .") Thus, the First Circuit in *Godin* applied the same reasoning as the Ninth Circuit applied in the *Sarver* and *Metabolife* decisions. Although a statutory time limit was not specifically at issue in *Godin*¸ the court assumed that anti-SLAPP motions would be filed and considered **after** the kind of record development that precedes a summary judgment motion:

> Whether the procedures outlined in [the anti-SLAPP statute] will in fact depart from those of Rule 12 and Rule 56 will depend on the particulars in a given case of the claim and defense. Some [anti-SLAPP] motions, like Rule 12(b)(6) motions, will be resolved on the pleadings. **In other cases, [the anti-SLAPP statute] will permit courts to look beyond the pleadings to affidavits and materials of record, as Rule 56 does.**

*Godin v. Schencks,* 629 F.3d 79, 90 (1st Cir. 2010) (footnote omitted) (emphasis added).

In the instant case, it was not until after full discovery, and SMUG filed its summary judgment Opposition, that Lively had sufficient knowledge of the alleged bases of SMUG's claims

to enable him to evaluate the applicability of the Massachusetts anti-SLAPP statute.[7] To be sure, prior to SMUG's filing its Opposition, the details of SMUG's wild conspiracy claims were blocked by the impenetrable wall of "I don't know" built by SMUG's witnesses. (*See* MSJ Reply at 6-26.) Accordingly, Lively's special motion to dismiss is timely, now that SMUG's intent to rely solely on Lively's speaking and writing is laid bare, and the Court can "look beyond the pleadings to affidavits and materials of record." *See Godin,* 629 F.3d at 90.[8]

### C. Lively's Speaking and Writing Easily Fit the Broad Definition of Petitioning Activity Protected by the First Amendment and Covered by the Massachusetts Anti-SLAPP Statute.

The anti-SLAPP statute protects a defendant's constitutional right of petition from "meritless suits . . . imposing significant litigation costs and chilling protected speech." *Godin*, 629 F.3d at 81. "The 'right of petition' referred to in the statute is the right protected by the First

---

[7] "[I]f a plaintiff has stated a legal claim but has no facts to support it, a defendant could prevail on an anti-SLAPP motion, though he would not have been able to win a motion to dismiss." *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010).

[8] Even if the sixty-day time limit of the Massachusetts statute were applicable in federal court, which it is not, the limit is permissive; MASS expressly permits the filing of a special motion to dismiss, "in the court's discretion, at any later time upon terms it deems proper." Mass. Gen. Laws ch. 231, § 59H. Courts regularly exercise their discretion to consider anti-SLAPP motions filed after the provisional statutory deadline. *See, e.g., Shire City Herbals, Inc. v. Blue*, No. 15-30069-MGM, 2016 WL 2757366, at *3 (D. Mass. May 12, 2016) ("The court will therefore exercise its discretion to hear the special motion to dismiss at this time."); *Pritchard v. Malm*, No. 13–P–732, 2014 WL 1922214, *2 (Mass. App. Ct. May 15, 2014) (rejecting argument that motion untimely because "a judge has discretion to extend the sixty-day filing period in the statute"); *Burley v. Comets Cmty. Youth Ctr., Inc.*, 75 Mass. App. Ct. 818, 819-20, 822, 917 N.E.2d 250, 253, 255 (2009) (acknowledging trial court's discretion to accept motion filed at time of motions in limine, after three years of discovery); *see also Hampton-Stein v. Aviation Fin. Grp., LLC*, 472 F. App'x 455, 457 (9th Cir. 2012) (holding no abuse of discretion by district court in accepting California anti-SLAPP motion after provisional deadline); *Bradbury v. City of Eastport*, 2013 ME 72, ¶ 12, 72 A.3d 512, 516 ("The [Maine] statute clearly leaves the filing of a special motion to dismiss after the sixty-day period to the discretion of the court.").

Amendment to the Constitution of the United States . . . ."[9] *Duracraft Corp. v. Holmes Prod. Corp.*, 42 Mass. App. Ct. 572, 575, 678 N.E.2d 1196, 1199 (1997).

The scope of activities protected by the anti-SLAPP statute is quite broad. "Petitioning has been consistently defined to encompass a very broad range of activities in the context of the anti-SLAPP statute." *Blanchard v. Steward Carney Hosp., Inc.*, 89 Mass. App. Ct. 97, 102–03, 46 N.E.3d 79, 84 (2016) (internal quotation marks omitted). "**The courts have construed 'petitioning activity' as including all statements made to influence, inform, or at the very least, reach governmental bodies—either directly or indirectly**." *Riverdale Mills Corp. v. Cavatorta N. Am., Inc.*, No. 4:15-CV-40132-TSH, 2016 WL 3030234, at *5 (D. Mass. May 26, 2016) (internal quotation marks omitted) (emphasis added). Indeed, the breadth of the statute's coverage is made plain by the language used to describe protected activities:

> **any written or oral statement** made before or submitted to [or] made in connection with an issue under consideration or review by [or] reasonably likely to encourage consideration or review of an issue by **a legislative, executive, or judicial body or any other governmental proceeding**; [or] any statement reasonably likely **to enlist public participation** in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

Mass. Gen. Laws ch. 231, § 59 (emphasis added).

Also made plain by the statute's express language is its coverage of petitioning activity, as broadly defined, to **any** government body ("made before or submitted to **a** legislative, executive, or judicial body, or **any other governmental proceeding**"), and even outside any governmental proceeding if "in connection with an issue under consideration or review by" any government body. *Id.* (emphasis added). Thus, Massachusetts courts have held that MASS applies to public

---

[9] The right of petition protected by the Massachusetts anti-SLAPP statute also includes the petition right under the Declaration of Rights of the Massachusetts Constitution. *Duracraft Corp.*, 678 N.E.2d at 1199, n.7.

speaking and writing directed to non-Massachusetts government bodies, and to non-government persons. *See, e.g., N. Am. Expositions Co. Ltd. P'ship v. Corcoran*, 452 Mass. 852, 861, 898 N.E.2d 831, 840–41 (2009) (statements to private foundation administering public funds are covered and protected by MASS); *Office One, Inc. v. Lopez*, 437 Mass. 113, 123, n.15, 769 N.E.2d 749, 758 (2002) (communications with FDIC are covered and protected by MASS); *Baker v. Parsons,* 434 Mass. 543, 545–551, 750 N.E.2d 953 (2001) (statements to U.S. Fish and Wildlife Service official are covered and protected by MASS); *MacDonald v. Paton*, 57 Mass. App. Ct. 290, 293–294, 782 N.E.2d 1089 (2003) (statements on private citizen's website criticizing local official are covered and protected by MASS).

The speaking and writing on which SMUG bases its claims against Lively easily fit within the broad definition of protected petitioning activity covered by the MASS. In the MTD Order, this Court found that SMUG's Amended Complaint alleged that Lively criminally "advised" Ugandan citizens how to pursue, and members of the Ugandan government how to enact, legislation restricting homosexual rights, namely the AHB.[10] (MTD Order at 34-35.) In its summary judgment opposition papers, SMUG framed Lively's offenses as petitioning, alleging that Lively was "one of the chief strategists" of the persecutory conspiracy centered on the AHB, but that the persecution was "executed by his co-conspirators," "the Ministry of Ethics and Integrity, through Buturo, and later, Lokodo," "[f]ollowing the script Defendant set out **in writings and presentations** during his meetings in Uganda in 2002 and 2009." (Opp. at 49, 73, 77 (emphasis added).)

10 "Of course, all these allegations will need to be proved at trial to entitle Plaintiff to a verdict, and they may not be." (MTD Order at 35.)

Thus, SMUG's theory is based entirely on Lively's petitioning activity, as expressly contemplated by the MASS: Ugandan government officials adopted a policy of persecution, ostensibly as a result of Lively's "written or oral statement[s] . . . made in connection with an issue under consideration or review by [or] reasonably likely to encourage consideration or review of an issue by" Uganda's "legislative, executive, or judicial" officials, and which were "reasonably likely to enlist public participation in an effort to effect such consideration." Mass. Gen. Laws ch. 231, § 59.

To be sure, SMUG utterly failed to demonstrate **any** criminal conduct or intent by Lively in its summary judgment opposition papers.[11] (*See* MSJ Reply at 58-70.) SMUG has never identified any "conduct" by Lively which is not protected by the First Amendment, under either its speech or petitioning provisions. (*See id.*; MSJ Br. at 83-119.) In any event, however, even if SMUG's theory of Lively's influence in Uganda were true, there is no question that his influence would have been the result of protected petitioning activity under the First Amendment, and expressly covered by the MASS.

[11] There is no evidence that Lively petitioned the Ugandan government to do anything other than to liberalize the already criminal punishments for homosexual conduct and focus on counseling and education rather than incarceration. (MF ¶¶ 58-61, 75-76, 79-81, 85, 98-100, 113, 142). Lively provided comments drastically toning down the punitive aspects of the AHB, and pleaded with the Ugandans to moderate the proposal. (MF ¶¶ 81, 85). Despite his efforts to lessen the criminal sanctions and soften the statute, all of his proposals were rejected by the Ugandan government. (MF ¶¶ 62-63, 82-84, 86-93). Moreover, discussing issues of marriage, family, and homosexuality, or writing to a government official asking him to change already-drafted proposed legislation about homosexuality, represent core protected speech about matters of public concern under the First Amendment. To the extent Lively discussed the public concern issues of marriage, family, and homosexuality with members of the Ugandan government, or corresponded with them regarding proposed legislation, such speaking and writing are also protected as petitioning activity.

### D. SMUG Cannot Satisfy the Heightened Burden Imposed by the Massachusetts Anti-SLAPP Statute.

Because SMUG's claims are based on Lively's petitioning activity, Lively's special motion to dismiss under the MASS shifts the burden to SMUG to prove its claims by a preponderance of the evidence. *See Blanchard v. Steward Carney Hosp., Inc.*, 89 Mass. App. Ct. 97, 102, 46 N.E.3d 79, 84. Specifically, SMUG must prove that Lively's "exercise of [his] right to petition was devoid of any reasonable factual support or any arguable basis in law," and that Lively's "acts caused actual injury to" SMUG. Mass. Gen. Laws ch. 231, § 59H. And SMUG must meet its burden with unequivocal evidence: "Evidence considered in reviewing a special motion to dismiss should be viewed in the light most favorable to the moving party because the responding party bears the burden of proof when the statute applies." *Godin*, 629 F.3d at 82 (internal quotation marks omitted).

As shown in Lively's summary judgment briefing, SMUG's claims cannot survive even the summary judgment standard, requiring merely a material issue of fact (*see* MSJ Br., MSJ Reply). Thus, SMUG certainly cannot save its claims from the heightened standard of the anti-SLAPP statute. Just as SMUG's utter failure to demonstrate recoverable damages from Lively's alleged acts is fatal to all its claims for purposes of summary judgment (*see* MSJ Br. at 130-41; MSJ Reply at 93-116), SMUG's inability to prove damages is likewise fatal to its ability to meet the "actual injury" prong of its burden under the anti-SLAPP statute. In addition, SMUG cannot meet the MASS burden with respect to its state law claims because—

- SMUG has no evidence of conduct by Lively which is not protected under the First Amendment (MSJ Br. at 83-119; MSJ Reply at 46-73);
- SMUG has no evidence of causation (MSJ Br. at 141-150; MSJ Reply at 73-93);

- SMUG has no evidence on the other essential elements of its state law claims (MSJ Br. at 165-171; MSJ Reply at 131-36);
- SMUG's state law claims are time barred (MSJ Br. at 173-75; MSJ Reply at 126-131);
- SMUG has no evidence to support this Court's jurisdiction over its state law claims (MSJ Br. at 171-72);
- SMUG has no evidence of wrongful domestic conduct by Lively (MSJ Br. at 57-61; MSJ Reply at 30-46); and
- SMUG lacks standing to bring any of its claims (MSJ Br. at 120-129).

## CONCLUSION

For all of the foregoing reasons, Defendant Scott Lively's Special Motion to Dismiss SMUG's State Law Claims Pursuant to the Massachusetts Anti-Slapp Statute should be granted.

Respectfully submitted,

/s/ Roger K. Gannam

Mathew D. Staver†
Horatio G. Mihet†
Roger K. Gannam†
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854-0774
T: 407-875-1776
F: 407-875-0770
court@lc.org
hmihet@lc.org
rgannam@lc.org

†Admitted *pro hac vice*
Attorneys for Defendant Scott Lively

Philip D. Moran (MA 353920)
265 Essex Street, Suite 202
Salem, Massachusetts 01970
T: 978-745-6085
F: 978-741-2572
philipmoranesq@aol.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically with the Court on March 31, 2017. Service will be effectuated by the Court's electronic notification system upon all counsel or parties of record.

/s/ Roger K. Gannam
Roger K. Gannam
Attorney for Defendant Scott Lively