UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | |
|---|---|
| SEXUAL MINORITIES UGANDA,<br><br>                    Plaintiff,<br><br>v.<br><br>SCOTT LIVELY, individually and as President of Abiding Truth Ministries,<br><br>                    Defendant. | CIVIL ACTION<br><br>**NO. 3-12-CV-30051-MAP**<br><br>*Leave to file granted on April 27, 2017* |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S SPECIAL MOTION TO DISMISS SMUG'S STATE LAW
CLAIMS PURSUANT TO THE MASSACHUSETTS ANTI-SLAPP STATUTE**

**DORSEY & WHITNEY, LLP**
Mark S. Sullivan, admitted *pro hac vice*
Joshua Colangelo-Bryan, admitted *pro hac vice*
Daniel W. Beebe, admitted *pro hac vice*
Kaleb McNeely, admitted *pro hac vice*
51 West 52nd Street,
New York, New York 10019-6119
Tel. 212-415-9200
sullivan.mark@dorsey.com

**CENTER FOR CONSTITUTIONAL RIGHTS**
Pamela C. Spees, admitted *pro hac vice*
Jeena D. Shah, admitted *pro hac vice*
Baher Azmy, admitted *pro hac vice*
Judith Brown Chomsky, admitted *pro hac vice*
A. Azure Wheeler
666 Broadway, 7th Floor
New York, NY 10012
Tel. 212-614-6431
Fax 212-614-6499
pspees@ccrjustice.org

Luke Ryan (MA Bar No. 664999)
100 Main Street, Third Floor
Northampton, MA 01060
Tel. 413-586-4800
Fax 413-582-6419
lryan@strhlaw.com

*Attorneys for Plaintiff*

April 24, 2017

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

ARGUMENT .......................................................................................................... 4

   I.  THE COURT SHOULD NOT CONSIDER LIVELY'S SPECIAL
      MOTION BECAUSE IT IS PROCEDURALLY IMPROPER. ................................. 4

     A.  Lively's Special Motion Is Grossly Untimely. ......................................... 4

     B.  Lively Cannot Demonstrate Good Cause
        for Such a Dilatory Filing. ..................................................................... 4

     C.  Lively Waived His Ability to File this Special Motion. ........................... 7

  II.  SHOULD THE COURT ENTERTAIN LIVELY'S UNTIMELY MOTION,
      IT SHOULD BE DENIED BECAUSE HIS CONDUCT IS NOT PROTECTED
      BY THE ANTI-SLAPP STATUTE. ....................................................... 8

     A.  Lively Cannot Meet His Threshold Burden Under
        the Anti-SLAPP Statute. ........................................................................ 8

        1.  The anti-SLAPP statute does not protect petitioning
            of foreign governments. ................................................................. 9

        2.  The Anti-SLAPP statute cannot be used to perpetuate
            the silencing of SMUG. ................................................................. 10

            i.      Lively's motion antithetical to the purpose
                  of the anti-SLAPP statute. ..................................................... 10

            ii.     Lively's conduct does not constitute petitioning activity. ............... 11

            iii.    Alternatively, SMUG's claims arise from conduct
                 beyond petitioning activity. .................................................... 12

     B.  Lively's conduct was devoid of any reasonable factual support
        or arguable basis in law and resulted in actual harm to SMUG. ............ 14

        1.  Lively's activities were devoid of reasonable factual support
            or arguable basis in law. ................................................................ 14

            i.      No reasonable factual support. ............................................. 14

            ii.     No arguable basis in law. ..................................................... 18

        2.  Lively's activities resulted in actual harm. ................................... 19

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Cal. Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508 (1972) ................... 14

*Crispin-Taveras v. Municipality of Carolina*, 647 F.3d 1 (1st Cir. 2011) ................... 8

*Godin v. Schenks*, 629 F.3d 79 (1st Cir. 2010) ................... 2, 7

*Hi-Tech Pharmaceuticals, Inc. v. Cohen*, No. 16-10660-WGY, 2016 U.S. Dist.
 LEXIS 130038 (D. Mass. Sept. 22, 2016) ................... 8, 14, 17

*Humphrey v. Comoletti*, No. 1:15-cv-14170-ADB, 2017 U.S. Dist. LEXIS 50465
 (D. Mass. Mar. 31, 2017) ................... 11

*Jobs First Indep. Expenditure Political Action Comm. v. Coakley*, No. 14-14338-
 NMG,2016 U.S. Dist. LEXIS 156321 (D. Mass. Nov. 10, 2016) ................... 13

*Metro. Prop. & Cas. Ins. Corp. v. Savin Hill Family Chiropractic, Inc.*, No. 15-
 12939-LTS, 2016 U.S. Dist. LEXIS 179264 (D. Mass. Dec. 28, 2016) ................... 13

*Riverdale Mills Corp. v. Cavatorta North Am., Inc.*, 189 F. Supp. 3d 317
 (D. Mass. 2016) ................... 12

*Shire City Herbals, Inc. v. Blue*, No. 15-30069-MGM, 2016 U.S. Dist. LEXIS
 62888 (D. Mass. May 12, 2016) ................... 4, 9

*Starbrands Capital, LLC v. Original MW Inc.*, No. 14-12270-ADB, 2016 U.S.
 Dist. LEXIS 30125 (D. Mass. Jan. 7, 2016) ................... 7

*Steinmetz v. Coyle & Caron, Inc.*, No. 15-cv-13594-DJC, 2016 U.S. Dist. LEXIS
 99631 (D. Mass. July 29, 2016) ................... 17

*Stuborn Ltd. P'ship v. Bernstein*, 245 F.Supp.2d 312 (D. Mass. 2003) ................... 10

*U.S. v. 29 Robinson Blvd.*, No. 10-cv-11236-MLW, 2012 U.S. Dist. LEXIS
 127424 (D. Mass. Sept. 7, 2012) ................... 8

## STATE CASES

*Baker v. Parsons,* 750 N.E.2d 953 (2001) ................... 14, 16-18

*Blanchard v. Steward Carney Hosp., Inc.*, 46 N.E.3d 79 (2016) ................... 12

*Bradbury v. City of Eastport*, 2013 ME 72, 72 A.3d 512 ................... 7

*Brooks Automation v. Blueshift Techs., Inc.,* 20 Mass. L. Rep. 541 (2006) .................... 17-18

*Burley v. Comets Cmty. Youth Ctr.*, 917 N.E.2d 250 (2009) ..................... 5

*Cadle Co. v. Schlichtmann*, 859 N.E.2d 858 (2007) ..................... 12

*Donavan v. Gardner*, 740 N.E.2d 639 (2000) ..................... 5

*Duracraft Corp. v. Holmes Prods. Corp.*, 691 N.E.2d 935 (1988) ..................... 5, 10

*Fader v. Great Harbor Yacht, Inc.*, No. NACV2014-00006, 2014 Mass. Super. LEXIS 120 (2014) ..................... 11

*Fustolo v. Hollander*, 920 N.E.2d 837 (2010) ..................... 8

*Garabedian v. Westland*, 796 N.E.2d 439 (2003) ..................... 13

*Guessous v. Chrome Hearts, LLC*, 102 Cal. Rptr. 3d 214 (2009) ..................... 9

*Islamic Soc'y of Boston v. Boston Herald, Inc.*, No. 05-4637, 2006 Mass. Super. LEXIS 391 (2006) ..................... 11-12

*Kobrin v. Gastfriend*, 821 N.E.2d 60 (2005) ..................... 9-10

*Macy's Retail Holdings, Inc. v. Gen. Growth Props.*, No. 07-2351, 2008 Mass. Super. LEXIS 162 (2008) ..................... 13

*Maxwell v. AIG Domestic Claims, Inc.*, 893 N.E.2d 791 (2008) ..................... 13

*N. Am. Expositions Co. Ltd. P'ship v. Corcoran*, 898 N.E.2d 831 (2009) ..................... 18

*Office One v. Lopez*, No. 96-2519, 1998 Mass. Super. LEXIS 573 (1998) ..................... 12

*Pritchard v. Malm*, 9 N.E.3d 348 (2014) ..................... 5

*Town of Hanover v. New Eng. Reg'l Council of Carpenters*, 6 N.E.3d 522 (2014) ..................... 5

## STATUTES

Mass. Gen. Laws ch. 231, § 59H ..................... *passim*

## UNITED STATES CONSTITUTION

U.S. Const. amend. I ..................... *passim*

**MASSACHUSETTS CONSTITUTION**

MASS. CONST. art. XI ...................................................................................................... 9

**RULES**

Fed. R. Civ. P. 12 ........................................................................................................... 7

**OTHER AUTHORITIES**

1994 MASS. HOUSE DOC. NO. 1520, pmble ..................................................................... 9

Arlene Stein, *Whose Memories? Whose Victimhood? Contests for the Holocaust Frame in Recent Social Movement Discourse*, 41(3) SOCIOLOGICAL PERSPECTIVES 519 (1998) ............................................................................... 16

Charter of the International Military Tribunal - Annex to the Agreement for the Prosecution and Punishment of the Major War Criminals of the European Axis art. 6(c), Aug. 8, 1945, 59 Stat. 1544, 82 U.N.T.S. 279 (Nuremberg Charter) ................................................................................................................ 18

HIDDEN HOLOCAUST: GAY AND LESBIAN PERSECUTION IN GERMANY 1933-45 (Günter Grau & Claudia Shoppmann eds., 1995) ....................................................... 16

Jim Burroway, *Lively's Lies: A Profile of Scott Lively*, POLITICAL RESEARCH ASSOCS. (Mar. 1, 2011), http://www.politicalresearch.org/2011/03/01/livelys-lies-a-profile-of-scott-lively/#sthash.yFnmfSEW.dpbs ............................................. 16

RICHARD PLANT, THE PINK TRIANGLE: THE NAZI WAR AGAINST HOMOSEXUALS (1986) ..................................................................................................................... 16

*Persecution of Homosexuals*, U.S. HOLOCAUST MEMORIAL MUSEUM, https://www.ushmm.org/learn/students/learning-materials-and-resources/homosexuals-victims-of-the-nazi-era/persecution-of-homosexuals (last visited Apr. 24, 2017) ................................................................................... 16

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

SEXUAL MINORITIES UGANDA,

              Plaintiff,

v.

SCOTT LIVELY, individually and as President of
Abiding Truth Ministries,

              Defendant.

CIVIL ACTION

**NO. 3-12-CV-30051-MAP**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S SPECIAL MOTION TO DISMISS SMUG'S STATE LAW
CLAIMS PURSUANT TO THE MASSACHUSETTS ANTI-SLAPP STATUTE**

Plaintiff Sexual Minorities Uganda ("SMUG") respectfully submits this memorandum of law in opposition to the Special Motion to Dismiss SMUG's State Law Claims Pursuant to the Massachusetts Anti-SLAPP Statute ("Special Motion") filed by Defendant Scott Lively.

**INTRODUCTION**

It comes as a surprise that after nearly five years of litigation and extensive briefing addressing the issue, Lively has only now discovered an asserted right to petition under the First Amendment or the Massachusetts constitution. The Massachusetts anti-SLAPP statute, MASS. GEN. LAWS ch. 231, § 59H ("anti-SLAPP statute") required Lively to file his motion within 60 days of the service of SMUG's complaint, specifically to protect any asserted speech and petitioning interests at the earliest possible stage in the litigation. It is a firm deadline that can be set aside only if the defendant could not have known the substantive bases justifying such a motion. Five years is far too late, perhaps in any case, but certainly where, as here, the

substantive bases that would justify such a motion have been extensively litigated from the very beginning.

Lively's sole justification for bringing this motion so late in the litigation is that he did not have "sufficient knowledge of the alleged basis of SMUG's claims" until SMUG filed its opposition to his summary judgment motion.  Dkt. 334 at 5-6.  This is astounding. Specifically, four months after the service of SMUG's complaint, Lively's first motion to dismiss asserted the same speech and petitioning rights, including the right to "petition the government," dkt. 22 at 20, that he now raises in his Special Motion, as did his motion to dismiss SMUG's First Amended Complaint which included the state law claims he now seeks to dismiss.  Dkt. 33 at 23-24. Eighteen months after the filing of the complaint, he raised the same speech and petitioning defenses in his motion seeking certification of an interlocutory appeal of this Court's earlier rejection of such defenses. Dkt. 65 at 17-19 (and again in his subsequent request for reconsideration, dkt. 73 at 10).  Years of discovery came and passed, as did the Court's binding July 5, 2016 deadline for the filing of dispositive motions.  Dkt. 246. Lively did file a motion for summary judgment by the Court's deadline – which raised each and every argument he now rehashes as a Special Motion, *see* dkt. 257 at 112-119, yet he did not by this binding deadline – and nearly four and a half years after the filing of the complaint – invoke any asserted defenses under the anti-SLAPP statute. Nor did he do so in his 136-page reply brief. *See* dkt. 305 at 46-72.

Interestingly, Lively has revealed his actual motivation for this grossly dilatory filing. Misunderstanding the case upon which he relies, *Godin v. Schenks*, 629 F.3d 79 (1st Cir. 2010), Lively appears to believe that denials of anti-SLAPP motions, unlike denials of summary judgment motions such as the one pending in this Court, are immediately appealable.  He is wrong on the proposition of law, but has demonstrated that what he seeks by this motion is not a

*bona fide* adjudication by this Court, but a backdoor, expedited access to the Court of Appeals should this Court determine his free speech and petitioning defenses fail in the face of the record evidence.  This gamesmanship adds to the impropriety of this extraordinarily late filing.  For all these reasons, the Special Motion should not be countenanced.

Even if the Court were to grant Lively leave to file this untimely motion, it should be denied on the merits.  *First*, the conduct upon which SMUG's claims are based cannot be described as legitimate petitioning activity as contemplated by the statute, nor as exclusively petitioning activity.  Rather, Lively's communications to his co-conspirators were the means through which he contributed to the severe deprivations of LGBTI Ugandans' fundamental rights, on a widespread or systematic basis. *Second*, even if SMUG's claims were somehow considered to be based exclusively on protected petitioning activity, the record evidence demonstrates that Lively's activities were utterly devoid of reasonable factual support or arguable basis in law and actually harmed SMUG. Lively, along with his co-conspirators, deployed false and misleading claims about LGBTI people (*e.g.*, connecting them to pedophilia, rape, and genocidal movements) to justify an end for which there is never any arguable legal basis – the crime against humanity of persecution. The anti-SLAPP statute, like its federal doctrinal analogs, is not meant to shield, or worse facilitate, purported "petitioning" activity that is taken for unlawful purposes or toward unlawful ends, such as silencing a persecuted minority. And it is certainly not intended to deny a persecuted plaintiff, deprived of fundamental rights, their day in court.

## ARGUMENT

**I.     THE COURT SHOULD NOT CONSIDER LIVELY'S SPECIAL MOTION BECAUSE IT IS PROCEDURALLY IMPROPER.**

### A.     Lively's Special Motion Is Grossly Untimely.

Lively's Special Motion is untimely under the Massachusetts anti-SLAPP statute and the Court's scheduling order in this case. The anti-SLAPP statute provides that a special motion to dismiss must be filed either within 60 days of the service of the complaint or, at a later time only if the court deems it "proper." *See Shire City Herbals, Inc. v. Blue*, No. 15-30069-MGM, 2016 U.S. Dist. LEXIS 62888, at *11 (D. Mass. May 12, 2016). Here, SMUG filed and served the Amended Complaint (in which it first asserted state law claims against Lively) on July 13, 2012 – over four and a half years ago. *See* Dkt. No. 27. Moreover, as he did in his first motion to dismiss, dkt. 22, Lively filed a motion to dismiss the Amended Complaint (including the state law claims asserted therein), raising nearly identical objections based on free speech and petitioning activities, *see infra* Section I(B); yet he failed to raise any argument under the Massachusetts anti-SLAPP statute. *See* Dkt. No. 33.

In addition, this Court ordered that any dispositive motions be filed by July 5, 2016. Dkt. No. 246. Lively failed to meet this deadline even though, as he has effectively conceded, *see infra* at I.B., he understood the basis for such a motion at the time of filing his motion for summary judgment. Even if the Court might have allowed Lively leave to file his Special Motion several years after the passing of the statutory deadline (which should not be permitted), Lively should not be permitted to disregard the Court's scheduling order.

### B.     Lively Cannot Demonstrate Good Cause for Such a Dilatory Filing.

The Court may permit a belated anti-SLAPP motion only if it deems such a filing "proper." *See Shire City*, 2016 U.S. Dist. LEXIS 62888, at *11-12 (permitting anti-SLAPP

motion filing beyond the 60-day deadline when it was filed in accordance with the court's scheduling order for early dispositive motions, little discovery had taken place, and the case was "in its infancy").[1] In practice, such an extension is permitted only in extraordinary cases such as where the moving party required discovery to learn the facts to determine whether a special motion might ever be warranted.  *See, e.g.*, *Donavan v. Gardner*, 740 N.E.2d 639, 644 n.12 (2000) ("Some situations may require extensive discovery before a party learns the facts that indicate that a special motion to dismiss is warranted."); *accord Burley v. Comets Cmty. Youth Ctr.*, 917 N.E.2d 250  (2009) (special motion allowed where motion was based, in part, on evidence gleaned in discovery and a court ruling in a related case); *Pritchard v. Malm*, 9 N.E.3d 348  (2014) ("The judge did not abuse his discretion because Malm asserted her anti-SLAPP defense *promptly after discovery revealed* that Pritchard's claim rested only on the letter to the State Ethics Commission." (emphasis added)).

No such extraordinary conditions exist here that would support such a massive extension of the 60-day deadline for Lively – and Lively cannot plausibly contend otherwise.  Lively baldly asserts in passing that only after SMUG filed its summary judgment opposition did he possess "sufficient knowledge of the alleged bases of SMUG's claims" to make the availability of this Special Motion apparent. Dkt. 334 at 5-6.[2]  This is absurd. To begin, Lively's first motion

---

[1]     Indeed, the purpose of the Massachusetts anti-SLAPP statute is to allow a defendant to quickly move to protect her asserted right to petition from the burden of meritless lawsuits. *Town of Hanover v. New Eng. Reg'l Council of Carpenters*, 6 N.E.3d 522, 528 (2014). Therefore, the statute provides for a special motion to dismiss that allows courts to "dispose expeditiously of meritless lawsuits that may chill petitioning activity."  *Id.* (quoting *Duracraft Corp. v. Holmes Prods. Corp.*, 691 N.E.2d 935, 943 (1988)).

[2]     Even if this were true, it does not explain why this defense did not appear in the 136-page reply brief Lively filed in support of his summary judgment motion. Dkt. 305. Moreover, in attempting to justify the extreme lateness of this filing on this basis, Lively doubles down on his claim that he was surprised by his own evidence, once again blaming his victims for not having

to dismiss, dkt. 22 at 14-20, as well as his Motion to Dismiss the First Amended Complaint, dkt. 33, which included the state law claims he now seeks to dismiss, prioritized his asserted defenses of free speech and the right to petition. *See, e.g.,* dkt 33 at 23 ("Mr. Lively has a protected right to petition government to enact legislation, regardless of whether SMUG likes his proposals or even his motives."). In denying Lively's motion to dismiss, this Court expressly addressed his First Amendment arguments related to speech and petitioning activity.  Dkt. 59 at 62-63. Thereafter, his motion seeking an interlocutory appeal of this Court's denial of his motion to dismiss also discussed Lively's asserted right to petition.  Dkt 65 at 18-19 n.10. As did his subsequent request for reconsideration. Dkt. 73 at 10.

If there were any doubt about the inexcusable untimeliness of this Special Motion, Lively himself removes it in his brief.  Referring to his arguments concerning his constitutional entitlement to engage in petitioning activity – and the same nucleus of operative facts relevant to the Special Motion – Lively states: "As shown in Lively's summary judgment briefing, all of SMUG's claims are subject to the U.S. Constitution, and must overcome the First Amendment, including its protections for both speech and petitioning." Dkt. 334 at 1.  This is a plain, conclusive concession that Lively fully understood the issues he now raises at the time he filed for summary judgment – yet he failed to file this motion then or in the eight months since.[3]  The

---

personal, first-hand knowledge of how he worked with co-conspirators to persecute them, and continuing to misrepresent their testimony to this Court in the process. Dkt. 334 at 5-6. In previous briefing, SMUG has clarified for the Court that Lively's claims that SMUG and its officers put up an "impenetrable wall of 'I don't know,'" *see, e.g., id.*, were responses to questions about their direct, first-hand knowledge *apart from* their knowledge of or views on Defendant's own documents. *See* dkt. 315 at 3-4.

[3]     Lively's summary judgment motion was replete with references to his right to speech and petition, as well as the record evidence of his activities he claims are protected, evidencing the availability of the anti-SLAPP arguments he rehashes now.  *See, e.g.* Dkt. 257 at 103 ("But the only activities of this alleged 'campaign' that SMUG could identify in discovery are First

motion should be denied as untimely. *See Bradbury v. City of Eastport*, 2013 ME 72, 72 A. 3d 512 (under a similar Maine statute, no abuse of discretion in denying special motion brought five to seven months after claims were filed, noting that there is no statutory requirement to consider the prejudice to the parties or the merits of the motion because to do so would eviscerate the sixty-day requirement).

Lively also makes plain that the true reason he is filing this Special Motion is that he (incorrectly) believes that denials of such motions, unlike denials of motions brought pursuant to Rule 12 or 56, are immediately appealable in the First Circuit.  *See* dkt. 334 at 4 n.6.  Lively is wrong and misrepresents the holding of the case upon which he relies.[4]  In any event, acting on this incorrect belief, it is apparent he is filing this motion as an attempted end run to the Court of Appeals around this Court's prior motion to dismiss ruling or in the event of an adverse ruling on his summary judgment motion.

### C.      Lively Waived His Ability to File this Special Motion.

Pursuant to Rule 12, "[a] party that makes a motion under Rule 12 of the Federal Rules of Civil Procedure must not make another motion under the same rule raising a defense or objection that was available to the party but omitted from its earlier motion."  *Starbrands Capital, LLC v. Original MW Inc.*, No. 14-12270-ADB, 2016 U.S. Dist. LEXIS 30125, at *2 n.1 (D. Mass. Jan. 7, 2016). Accordingly, the omission of known grounds for dismissal from a motion to dismiss

---

Amendment protected activities: (i) writing and delivering petitions to the Ugandan Parliament. . . ."); *id*. at 83 ("discovery has confirmed that SMUG's claims against Lively are simply unvarnished criticism of his protected free speech and nothing more…").

[4]      *Godin*, 629 F.3d at 85, only held that the narrow question presented in that case – a decision regarding the applicability of the Massachusetts anti-SLAPP statute to pending state law claims in federal actions – was immediately appealable under the collateral order doctrine's narrow exception to appeals from final judgment. The Court expressly stated it was not holding that the separate question of a federal court's *disposition* of an anti-SLAPP motion on the *merits* is itself immediately appealable.  *Id*. at 84.

generally amounts to a waiver of dismissal on those grounds.[5]  *See Crispin-Taveras v. Municipality of Carolina*, 647 F.3d 1, 7 (1st Cir. 2011); *United States v. 29 Robinson Blvd.*, No. 10-cv-11236-MLW, 2012 U.S. Dist. LEXIS 127424, at *20 (D. Mass. Sept. 7, 2012).  As described above, Lively had full knowledge of the grounds for any anti-SLAPP motion at the time he filed his initial Motion to Dismiss.  The arguments in the Special Motion are therefore waived.

## II.   SHOULD THE COURT ENTERTAIN LIVELY'S UNTIMELY MOTION, IT SHOULD BE DENIED BECAUSE HIS CONDUCT IS NOT PROTECTED BY THE ANTI-SLAPP STATUTE.

SMUG believes the Special Motion is so procedurally improper that it has limited its substantive opposition to certain particularly pertinent legal issues. If the Court finds that there is a proper procedural basis for the motion, SMUG would respectfully request the opportunity to submit a comprehensive opposition on the merits, unless the Court finds, based on the papers already submitted, that the special motion is properly denied on the merits.

### A.  Lively cannot meet his threshold burden under the Anti-SLAPP statute.

To prevail on a motion to dismiss pursuant to the anti-SLAPP statute, Lively "first must 'make a threshold showing through pleadings and affidavits that the claims against [him] are based on. . . petitioning activities alone. . . .'" *Hi-Tech Pharmaceuticals, Inc. v. Cohen*, No. 16-10660-WGY, 2016 U.S. Dist. LEXIS 130038, at *4 (D. Mass. Sept. 22, 2016) (quoting *Fustolo v. Hollander*, 920 N.E.2d 837, 840 (2010)). Lively cannot meet his burden. As set out below, Lively's conduct does not constitute protected petitioning activity, and alternatively, to the extent that it does, SMUG's claims are not *solely based on* his petitioning activity.

---

[5]    Although Lively does not cite to the Federal Rules, *see* dkt. Nos. 333, 334, this Court should treat this motion as a motion to dismiss pursuant to Rule 12.  Lively has already brought two previous motions to dismiss under Rule 12.  *See* dkt. Nos. 22, 33.

1.  <u>The anti-SLAPP statute does not protect petitioning of foreign governments.</u>

The anti-SLAPP statute is meant to protect the exercise of the "right of petition under the constitution of the United States or of the commonwealth." MASS. GEN. LAWS ch. 231, § 59H; *see also Shire City*, 2016 U.S. Dist. LEXIS 62888, at *14 ("protected activity is limited to petitioning in the 'constitutional sense'"); *Kobrin v. Gastfriend*, 821 N.E.2d 60, 65 (2005) ("[T]he Legislature explicitly used the phrase "right of petition under the constitution" in the statute, thus expressly implicating the term's constitutional meaning.").  As this Court already correctly observed, there is no First Amendment right to petition a foreign government. Dkt. 59 at 62-63.  *See also* dkt. 292 at 131-32.  Nor is there such a right under the Massachusetts constitution. *See* MASS. CONST. art. XI ("The people have a right…to…give instructions to *their representatives*, and to request of the legislative body, by the way of addresses, petitions, or remonstrances, *redress of the wrongs done them*, and of the grievances they suffer." (emphasis added)).

In enacting the anti-SLAPP statute, the Massachusetts legislature sought to protect *self*-government, not simply petitioning activity. *Kobrin*, 821 N.E.2d at 64 ("the statute is designed to protect overtures to the government by parties petitioning *in their status as citizens*" (emphasis added));  *See* 1994 MASS. HOUSE DOC. NO. 1520, pmble ("The legislature finds and declares that full participation by persons and organizations and robust discussion of issues before legislative, judicial, and administrative bodies and in other public fora are essential to the democratic process…"); *Shire City*, 2016 U.S. Dist. LEXIS 62888, at *14 ("protected activity is limited to…activities seeking from the government any form of redress for a grievance of one's own or otherwise petitioning on one's own behalf" (internal quotations omitted)).  California courts have expressly held that the state's similar anti-SLAPP law is limited to protecting *domestic* petitioning activity. *See Guessous v. Chrome Hearts, LLC*, 102 Cal. Rptr. 3d 214, 219 (2009)

(explaining that anti-SLAPP statute "clearly limits the petitioning or free speech activity to that made pursuant to rights granted by the United States or California Constitutions, and neither Constitution grants a United States citizen the right to petition a foreign government").[6]

In his self-described role as a "government consultant" "in more than 30 countries," dkt. 270 at ¶ 5, Lively's activities directed at Uganda were in support of efforts by his Ugandan counterparts to effectuate systematic persecution using *Ugandan* social, legal, and political institutions, *see id*. at ¶ 2.  He was not petitioning as a form of self-government or for redress of his grievances, and neither the United States nor Massachusetts constitutions bestow upon citizens a right to petition other governments.

### 2. The Anti-SLAPP Statute Cannot Be Used to Perpetuate the Silencing of SMUG.

#### i. *Lively's motion antithetical to the purpose of the anti-SLAPP statute.*

The anti-SLAPP statute seeks to protect citizens from punishment for "exercising their political or legal rights" to redress wrongs committed against them or the public. *Stuborn Ltd. P'ship v. Bernstein*, 245 F.Supp.2d 312, 314 (D. Mass. 2003) (quoting *Duracraft Corp.*, 691 N.E.2d at 940).  SMUG's claims arise from allegations, now supported by evidence, that Lively worked with Ugandan actors to deprive SMUG and other LGBTI Ugandans of their fundamental rights, including *their* ability to engage in petitioning activity in order to protect their rights. *See*, *e.g*., dkt. 292 at 122-23.  The Massachusetts Supreme Court has cautioned that the anti-SLAPP statute should not be used to "compromise the nonmoving party's right to petition—the same right the statute was enacted to protect." *Kobrin*, 821 N.E.2d at 66.  Rather than engaging in

---

6    Lively's assertion that the inclusion of the word "any" before "government body" or "government proceeding" renders the statute applicable to activity before foreign governments is both implausible and baseless. Lively cites exclusively to cases concerning the petitioning of U.S.-based bodies or persons on purely domestic matters. *See* dkt. 334 at 7.

conduct to redress wrongs, Lively's efforts were directed at taking away rights from a stigmatized minority. Rights-depriving conduct cannot be protected by the anti-SLAPP statute. *Cf. Islamic Soc'y of Boston v. Boston Herald, Inc.*, No. 05-4637, 2006 Mass. Super. LEXIS 391, at *35-36 (because the plaintiffs also raised civil rights claims, "[t]o prevent them from pursuing relief at this early juncture without a more compelling showing on the part of the defendants that they are being sued solely because of their petitioning activity would come dangerously close to applying [the anti-SLAPP statute] in an unconstitutional manner").

### ii.  *Lively's conduct does not constitute petitioning activity.*

Even if Lively had a right to petition foreign governments, Lively's anti-SLAPP motion fails for the same reasons his First Amendment petitioning arguments fail. *See* dkt. 292 at 122-32.

Lively's communications to his co-conspirators do not constitute petitioning activity protected by the statute.  His statements were made not as a member of the public expressing a grievance, but rather as a persecution consultant advising his colleagues in Ugandan on how to persecute LGBTI people, so as to deprive them of fundamental rights, including *their* right to speech and petition. *See* dkt. 292 at 69-78; 324-1 at 2-8. The context of activity may reveal that it is sufficiently coercive or calculated to expose its non-petitioning purpose. *See Humphrey v. Comoletti*, No. 1:15-cv-14170-ADB, 2017 U.S. Dist. LEXIS 50465, at *14 (D. Mass. Mar. 31, 2017) (typical petitioning activity, such as the initiation of process, without more, "can be sufficiently coercive and calculated to promote an ulterior advantage to support an abuse of process claim and survive an Anti-SLAPP motion" for purposes of the first prong); *Fader v. Great Harbor Yacht, Inc.*, No. NACV2014-00006, 2014 Mass. Super. LEXIS 120, at *12-13 (2014) (denying anti-SLAPP motion to dismiss claims alleging hostile work environment and retaliation based on context "evidencing an ulterior motive to prevent [plaintiff] from enforcing

her legal rights"). *See also Riverdale Mills Corp. v. Cavatorta North Am., Inc.*, 189 F. Supp. 3d

317, 325 (D. Mass. 2016); *Cadle Co. v. Schlichtmann*, 859 N.E.2d 858, 864-65 (2007).

Moreover, Lively's "behind-the-scenes" role as a foreign player in the development of

legally-sanctioned persecution in Uganda, *see, e.g.*, dkt. 270 at ¶ 96 (describing Lively's email to

Martin Ssempa offering proposed edits to the Anti-Homosexuality Bill), renders his activities

ineligible for protection.  For example, in *Islamic Soc'y of Boston v. Boston Herald, Inc.*, the

court rejected the defendant' argument that they were protected from liability because their

conduct was "instrumental in having…instituted" the lawsuit on which the plaintiffs' claims

were (in part) based.  2006 Mass. Super. LEXIS 391, at *31-32.  The court held "their behind-

the-scenes support of that lawsuit [does not] convert[] everything they did into petitioning

activity." *Id.* at *32.

> iii.  *Alternatively, SMUG's claims arise from conduct beyond petitioning activity.*

The anti-SLAPP statute offers "narrow" protection for litigation based solely on

petitioning activities; it was not meant "to immunize all suits touching upon the right to petition."

*Office One v. Lopez*, No. 96-2519, 1998 Mass. Super. LEXIS 573, at *1 (1998) (citing

*Duracroft*, 691 N.E.2d at 940).  Even if the Court were to find that any of Lively's

communications with his co-conspirators qualified as protected petitioning activity, they

simultaneously served a non-petitioning purpose: to advise his co-conspirators on how to

persecute LGBTI Ugandans.  *See, e.g.,* dkt. 292 at 69-78; 324-1 at 2-8.  Generally, where

conduct serves both petitioning and non-petitioning purposes, the claims arising from that

conduct cannot be based "solely and exclusively on petitioning activity," as required by the anti-

SLAPP statute. *See Blanchard v. Steward Carney Hosp., Inc.*, 46 N.E.3d 79, 94 (2016)

(concurring) (cert granted) (defamation claims arising from an email that "served patient care

and labor relations purposes" in addition to attempting to influence regulators were not be based "solely and exclusively on petitioning activity").

Specifically with regards to civil conspiracy claims (SMUG's state law claims here), where the petitioning activity is used to effectuate the goals of an unlawful conspiracy, a civil conspiracy claim is based on more than solely the petitioning activity and thus not properly the target of an anti-SLAPP motion.  For example, in *Macy's Retail Holdings, Inc. v. Gen. Growth Props.*, the court found that Macy's filing of the lawsuit was part of a civil conspiracy with another store to oppose the defendant's planned expansion of a property, and thus not immunized by the anti-SLAPP statute. No. 07-2351, 2008 Mass. Super. LEXIS 162 (2008).

Additionally, as SMUG alleged in its complaint, and demonstrated via many of Lively's own emails, Lively and his co-conspirators' efforts to draft and enact the Anti-Homosexuality Bill and advise the Minister of Ethics and Integrity on persecutory strategies, were merely part of a constellation of activities through which they worked to deprive LGBTI Ugandans of their fundamental rights. *See*, *e.g.*, dkt. 293-141; dkt. 293-108. *Cf. Metro. Prop. & Cas. Ins. Corp. v. Savin Hill Family Chiropractic, Inc.*, No. 15-12939-LTS, 2016 U.S. Dist. LEXIS 179264, at *23-24 (D. Mass. Dec. 28, 2016) (finding dismissal under anti-SLAPP statute inappropriate where the plaintiffs' claims arose not only from the defendants' conduct in pursuing litigation, but also their alleged participation in the development of fraudulent practices and protocols). *See also Jobs First Indep. Expenditure Political Action Comm. v. Coakley*, No. 14-14338-NMG, 2016 U.S. Dist. LEXIS 156321, at *6-7 (D. Mass. Nov. 10, 2016); *Maxwell v. AIG Domestic Claims, Inc.*, 893 N.E.2d 791, 799 (2008); *Garabedian v. Westland*, 796 N.E.2d 439, 444 (2003).

**B. Lively's conduct was devoid of any reasonable factual support or arguable basis in law and resulted in actual harm to SMUG.**

The anti-SLAPP statute was not intended to create an "insurmountable barrier to relief" and the presumption is not for dismissal. *Baker v. Parsons,* 750 N.E.2d 953, 961 (2001). If the Court finds that Lively has met his burden of showing that SMUG's state law claims against him are based solely on petitioning activity protected by the United States or Massachusetts constitutions, SMUG need only make "a prima facie showing" that Lively's "petitioning activities had no reasonable basis in fact or law" and caused actual injury.[7] *Hi-Tech Pharmaceuticals, Inc.*, 2016 U.S. Dist. LEXIS 130038, at *11-12 (D. Mass. Sept. 22, 2016). SMUG's filings in opposition to Lively's motion for summary judgment amply do so.

1. Lively's activities were devoid of reasonable factual support or arguable basis in law.

i. *No Reasonable Factual Support*

Lively has no reasonable factual support for what he claims are solely petitioning activities, i.e. his plan to deprive LGBTI Ugandans of their fundamental rights. In its ruling denying Lively's Motion to Dismiss, the Court noted SMUG's allegations that Lively "falsely vilified" the LGBTI community "to inflame public hatred against it," dkt. 59 at 34; commonly attributed to LGBTI people an "obsession with pedophilia," *id.* at 13, "playing on parents' fears, such as the bogus claims that gay and lesbian people had a compulsion to sexually abuse children"; and frequently advised that LGBTI people "engaged in a campaign to 'recruit' Ugandan children as homosexuals," *id*. at 12-13. The Court also described other allegations

---

[7]   This exception under the anti-SLAPP statute is akin to that carved out by the U.S. Supreme Court for petitioning activities under the First Amendment. *See Cal. Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 514 (1972). As this Court recognized in denying Lively's motion to dismiss, "the petition clause cannot protect activities taken for unlawful purposes or toward unlawful ends." Dkt. 59 at 63.

concerning Lively's attacks on LGBTI people as "bordering on ludicrous," *id.* at 12, such as revising the history of the Holocaust to suggest that "homosexuals were behind the rise of Nazism and the genocide in Rwanda," *id.* The record evidence confirms the absurd factual basis underlying his asserted petitioning activities.

Lively has routinely deployed the false conflation of homosexuality and pedophilia to vilify the LGBTI community and advised others to do so as well. *See, e.g.,* dkt. 270 at ¶ 19 (Lively's recommendation to "emphasize the issue of homosexual recruitment of children" because "the protection of children trumps any argument for 'gays' as societal victims') and ¶ 70 (Lively opening his pivotal lecture at the 2009 anti-homosexuality conference in Uganda with an account of the rape of a male child by an adult male). *See also, e.g., id.* at ¶¶ 71, 76.   Lively's co-conspirators deployed this tactic as well. *See*, *e.g., id*. at ¶ 98 (Bahati introducing a male child victim of sexual assault by an adult male to the entire Parliament before introducing the Anti-Homosexuality Bill); *id.* at ¶ 88 (Buturo before Parliament on the need for a stronger law, asserting "non-governmental organizations are recruiting our youth… to turn them into homosexuals"); *id.* at ¶ 118 (Ssempa leading a march in 2010 to demand stronger laws on homosexuality claiming children were "being raped violently by bullies in the school").

The record is also replete with evidence of Lively's characterizations of homosexuals as genocidal and extremely dangerous, including being responsible for fascism and genocide in Nazi Germany. *See*, *e.g.*, dkt. 293-189; dkt. 270 at ¶ 8, 72, 169; dkt. 249-1, at ¶ 25(d). Lively's co-conspirators followed suit. *See, e.g.,* dkt. 270 at ¶ 30 (Ssempa discussing homosexuals as driving force behind Hitler's movement on his TV show); *id*. at ¶¶ 82, 106 (Langa discussing *The Pink Swastika* at a follow-up meeting to the 2009 anti-gay seminar); *id*. at ¶¶ 89, 91 (Buturo stating to Ugandan Parliament that legalizing homosexuality would "spell the end of human

civilisation as we know it today," followed by another minister advising, "[w]e must exterminate homosexuals before they exterminate society").

The inquiry for anti-SLAPP purposes is whether there is *reasonable* factual support for the petitioning activity as opposed to *any* factual or legal support. *See*, *e*.*g*., *Baker,* 750 N.E.2d at 961-62. There is no reasonable factual basis for the claims Lively deploys to enlist and assist his co-conspirators to carry out his persecutory agenda. First, as noted by SMUG's expert, Dr. Ilan Meyer, the empirical research shows that gay or bisexual men are no more likely than heterosexual men to molest children and there is no scientific basis for asserting that they are more likely to do so. *See* dkt. 293-222 at 15. Despite this, the conflation of homosexuality with pedophilia has been "particularly venomous rhetoric used by anti-gay activists in the West, and more recently, in Africa and other countries." *Id.* at 14. Second, Lively's revision of the history of the Holocaust as being driven by homosexuals has been "dismissed as farce" by historians.[8] Beyond the fact that his Holocaust revision falls far short of the standard of "reasonable factual support," the detailed historical record of Nazi persecution of homosexuals further demonstrates the absurdity of his claims.[9]

---

[8]     *See generally* Jim Burroway, *Lively's Lies: A Profile of Scott Lively*, POLITICAL RESEARCH ASSOCS., (Mar. 1, 2011), http://www.politicalresearch.org/2011/03/01/livelys-lies-a-profile-of-scott-lively/#sthash.yFnmfSEW.dpbs; *see also, id.* at n.xxxi; Arlene Stein, *Whose Memories? Whose Victimhood? Contests for the Holocaust Frame in Recent Social Movement Discourse*, 41(3) SOCIOLOGICAL PERSPECTIVES 519 (1998) (describing at p. 530 *The Pink Swastika* as a "carefully constructed piece of political rhetoric, mixing serious scholarship with lies and outright distortions, truths with half-truths and falsehoods").

[9]     *See, e.g.* HIDDEN HOLOCAUST: GAY AND LESBIAN PERSECUTION IN GERMANY 1933-45 (Günter Grau & Claudia Shoppmann eds., 1995); *Persecution of Homosexuals*, U.S. Holocaust Memorial Museum, https://www.ushmm.org/learn/students/learning-materials-and-resources/homosexuals-victims-of-the-nazi-era/persecution-of-homosexuals (last visited Apr. 24, 2017); RICHARD PLANT, THE PINK TRIANGLE: THE NAZI WAR AGAINST HOMOSEXUALS (1986). The policy of persecution included banning gay associations and publications, registration lists of homosexuals, sending gay men to prisons as well as concentration camps and subjecting them

Moreover, Lively has admitted that his system of classification of homosexuals and their variance from "gender normalcy" is based on his "own observations" and "broad generalizations," dkt. 249-1, at ¶ 25(d), though he has no qualifications or training in social or cultural anthropology, psychology, history, population research, demographic studies, sociology, or public health, *see id.* at 3. *Compare Steinmetz v. Coyle & Caron, Inc.*, No. 15-cv-13594-DJC, 2016 U.S. Dist. LEXIS 99631, at *25 (D. Mass. July 29, 2016) (finding "reasonable factual support" where the defendant sued based on their architectural renderings had "extensive qualifications as an architect"). Lively also admitted during his deposition that at the time he told his Ugandan audience that the Rwandan genocide "probably involved" homosexuals from his "monster" category, dkt. 270 at ¶ 72, he did not know or believe that the Rwandan genocide "had anything to do with homosexuality," *see* Declaration of Pamela C. Spees, dated April 24, 2017, Ex. A (Lively Dep.) 55:21-56:10.[10]  This admission demonstrates that Lively has, at a minimum, "acted with reckless disregard as to whether there was any reasonable factual support." *Brooks Automation v. Blueshift Techs., Inc.,* 20 Mass. L. Rep. 541 (2006).[11]

---

to medical experimentations. *See, e.g.,* Grau, *supra*; Plant, *supra*. Leading Nazi Heinrich Himmler, expressed this policy: "We must exterminate these people root and branch… We can't permit such danger to the country; the homosexual must be entirely eliminated." Plant at 99.

[10]     At the summary judgment stage, Lively offered a self-serving explanation that his infamous 2009 reference to the genocide in Rwanda was somehow not intended to imply there was a "homosexual aspect to the event," even though the reference was during his description of "categories of persons who identify as homosexual," dkt. 249-1 (Lively Decl.) at ¶ 25(d), at a seminar devoted exclusively to combatting the threat of homosexuality, *see, e.g.,* dkt. 249-2, Ex. 1 at Lively 3195.

[11]     Lively tries to inoculate against these deficiencies by characterizing his statements as opinions. *See, e.g.,* dkt. 257 at 91-92. However, as this Court acknowledged in *Hi-Tech Pharmaceuticals*, a party cannot have it both ways – either their statements are merely opinion or they have a factual basis.  2016 U.S. Dist. LEXIS 130038, at *15 (finding Hi-Tech "met its burden of coming forward with prima facie evidence that Cohen's petitioning activity had no [] basis [in law or fact]" citing Hi-Tech's memorandum in which it argues that Cohen cannot both claim that his statements were opinions and had a factual basis).

ii.     *No Arguable Basis in Law*

"[N]o reasonable person could conclude that there was [a basis in law]" for the persecution Lively worked to bring about. *See Baker v. Parsons*, 434 Mass. 543 at n. 20. *See also Brooks Automation,* 20 Mass L. Rep. .  As this Court held in its ruling on Lively's motion to dismiss, "Widespread, systematic persecution of LGBTI people constitutes a crime against humanity that unquestionably violates international norms." Dkt. 59 at 20, 36. Moreover, the crime against humanity of persecution is a peremptory, *jus cogens* norm from which no derogation is permitted. *See* dkt. 38 at 19-42; dkt. 292 at 36-46. *See also* dkt. 293-224, ¶¶ 27-28. *See also* Nuremberg Charter, Art. 6(c) (prohibiting persecution "whether or not in violation of the domestic law of the country where perpetrated"). *Compare N. Am. Expositions Co. Ltd. P'ship v. Corcoran*, 898 N.E.2d 831, 844 (2009) (finding that the defendant's statements to an executive body were based on a "plausible argument that [the executive body] could never sponsor the for-profit type of event that [the plaintiff] provides" because "[a]lthough one sentence [of that relevant statute] refers to 'charitable events' and another refers to 'community events,' neither is the kind of commercial undertaking in which [the plaintiff] engages").

In its ruling denying Lively's motion to dismiss, the Court noted that the allegations featured Lively's "active involvement in well orchestrated initiatives by legislative and executive branch officials and powerful private parties in Uganda, including elements of the media, to intimidate LGBTI people and to deprive them of their fundamental human rights to freedom of expression, life, liberty, and property." Dkt. 59 at 30-31. As detailed in SMUG's summary judgment opposition, the record evidence confirms these allegations. *See* dkt. 292, at 47-65 (describing record evidence of widespread or systematic deprivation of fundamental rights of the LGBTI community); 69-85 (describing record evidence of Lively's active involvement in the

conspiracy to deprive the LGBI community of fundamental rights); dkt. 324-1, at 2-8 (same). Lively's actions were specifically and intentionally directed at depriving the LGBTI community in Uganda, and elsewhere, of fundamental rights because of their sexual orientation and gender identity, and/or advocacy in support of LGBTI rights – an unlawful end for which there is no arguable legal basis, given the absolute prohibition against it.

Lively himself has acknowledged that what he worked to bring about abroad, in particular, criminalizing the exercise of rights to expression and association by LGBTI people and advocates, would not be legal in the United States. *See, e.g.,* dkt. 270 ¶ 149 ("in the US you can't have unequal treatment of like groups. you couldn't do that in the United States for example…"); dkt. 270 ¶ 18(iv) (stating "[h]ere in the United States it would not be possible to pass such a law these days because of the way our First Amendment has been misinterpreted in recent decades by the U.S. Supreme Court" in reference to the Russian anti-propaganda law for which Lively took credit).  But as a peremptory norm, persecution – depriving a group of people of fundamental rights, including the rights to expression and association, on the basis of their identity – is not permitted anywhere.

2.   Lively's activities resulted in actual harm.

SMUG has suffered actual harm as a result Lively's actions. This Court noted two distinct sets of harms set out in SMUG's complaint in its ruling on the motion to dismiss: 1) that SMUG's operations, conferences, and staff were targeted as part of the persecutory campaign and as a result it had to retain the services of security personnel, take additional security measures for its premises, and relocate its offices and operations; and 2) SMUG had to expend considerable resources and efforts to counteract Lively's campaign of repression, which impaired its ability to carry out its own organizational objectives. Dkt. 59 at 47.

19

As set out in SMUG's summary judgment opposition brief, dkt. 292 at 91-95, the record evidence demonstrates actual harm suffered by SMUG. *See, e.g.,* dkt. 270 at ¶¶ 40, 139-144, 150-154, 161, 210-211 (SMUG's conferences and events and home of staff member raided by authorities); *id.* at ¶¶ 40, 56, 210-211 (SMUG staff arrested, detained and harassed by police); *id.* at ¶¶ 56, 211, dkt. 291 at ¶¶ 58-59 (SMUG staff subjected to cruel, inhuman and degrading treatment while in custody); dkt. 270 at ¶¶ 44-51 (SMUG officers and others fled country for safety after government minister proposes cataloguing those "involved in perpetuating the vice of homosexuality"); *id.* at ¶¶ 46, 100, 127-128, 170, 184-188, dkt. 291 at ¶¶ 8-9, 21, 26, 50 (SMUG staff outed in media and identified in humiliating and threatening ways, including at times listing the details of their locations); dkt. 270 at ¶¶ 50, 100-101, 170, 155-156, 184-188 (outings affected SMUG's operations and staff forced to take additional security measures and at times relocate for safety);  *id.* at ¶¶ 41, 57-59, 105, 139-144, 189, 199, 205, 208, 209 (SMUG's work hindered, and it has had to divert resources to counter the effects of the repression, targeting, arrests, harassment, criminalization, and to try to prevent passage of the Anti-Homosexuality Act).

Lively cannot use the anti-SLAPP statute to immunize himself from liability for these concrete and severe harms.

## **CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that the Court not allow Defendant's Special Motion to Dismiss as it is untimely and procedurally improper. If the Court does permit the late filing, Plaintiff respectfully requests that the Court deny Defendant's Special Motion to Dismiss, for the reasons set out above, or allow time for a more comprehensive submission.

Dated:  April 24, 2017                         Respectfully submitted,


*/s/ Pamela C. Spees*_____

Mark S. Sullivan, admitted *pro hac vice*                Pamela C. Spees, admitted *pro hac vice*

Joshua Colangelo-Bryan,                        Jeena D. Shah, admitted *pro hac vice*

    admitted *pro hac vice*                          Baher Azmy, admitted *pro hac vice*

Daniel W. Beebe, admitted *pro hac vice*           Judith Brown Chomsky, admitted *pro hac vice*

Kaleb McNeely, admitted *pro hac vice*             A. Azure Wheeler

DORSEY & WHITNEY, LLP                   CENTER FOR CONSTITUTIONAL RIGHTS

51 West 52nd Street,                              666 Broadway, 7th Floor

New York, New York 10019-6119           New York, NY 10012

Tel. 212-415-9200                                Tel. 212-614-6431

sullivan.mark@dorsey.com                  Fax 212-614-6499

                                          pspees@ccrjustice.org

                                       Luke Ryan (MA Bar No. 664999)

                                     100 Main Street, Third Floor

                                     Northampton, MA 01060

                                     Tel. 413-586-4800

                                     Fax 413-582-6419

                                     lryan@strhlaw.com

                                     *Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing was filed electronically, that it will be served electronically upon all parties of record who are registered CM/ECF participants via the NEF, and that paper copies will be sent to any parties indicated on the NEF as non-registered participants on April 24, 2017.

<u>/s/Pamela Spees</u>
Pamela Spees
Counsel for Plaintiff